## HENRY D. GRAY vs. JOSHUA BENNETT.

An insolvent debtor's right of action, for the recovery of threefold the amount of interest paid by him on a usurious contract, passes by an assignment of his estate, &c. under *St.* 1838, c. 163, § 5, and his assignee may maintain a bill in equity to recover it.

THIS was a bill in equity, brought by the assignee, duly appointed under *St.* 1838, c. 163, of John C. Cook, an insolvent debtor, to recover threefold the amount of usurious interest, alleged to have been paid by said Cook to the defendant, on sundry loans of money made by the defendant to said Cook.

The answer of the defendant, not admitting the alleged usurious contracts, averred, among other things, that the right of said Cook to maintain any action or bill in equity against the defendant, by reason of the facts set forth in the bill, was not, and could not by law have been, assigned to and vested in the plaintiff as assignee of said Cook, under *St.* 1838, c. 163 ; and that if otherwise, still that the bill could not be brought and maintained in the plaintiff's name.   The answer, therefore, concluded with a prayer for the judgment of the court, in the same

manner as if the matter aforesaid had been shown by plea or demurrer.

The case was submitted to the court on the foregoing objections, with an agreement of the parties, that if the same should be sustained, then the bill should be dismissed : Otherwise, that the bill, with the evidence, should be committed to a master, to report the amount recoverable, if any thing, by the plaintiff.

*B. R. Curtis,* for the plaintiff. It was the intention of *St.* 1838, *c.* 163, that every beneficial interest of the debtor, except his rights of action for torts to his person, and a claim to temporary support, should be disposed of for the benefit of his creditors. No further exceptions are allowed in any system of bankrupt or insolvent laws. *Smith* v. *Coffin,* 2 H. B. 461. By § 5 of this statute, all property, which the debtor could have assigned, passes to his assignee. Remote and contingent interests are assignable, and are held to pass to assignees of bankrupts and insolvent debtors. *Breckenridge* v. *Churchill,* 3 J. J. Marsh. 13. *Schondler* v. *Wace,* 1 Campb. 487. *Higden* v. *Williamson,* 3 P. W. 132.

The Rev. Sts. *c.* 35, § 3, provide that when usurious interest is paid, it may be recovered back, with enhanced damages, by an action of debt or bill in chancery. Neither of these processes is penal ; certainly not a bill in chancery — for a defendant cannot be called upon to discover penal transactions. Story Eq. Pl. § 521. The action of debt, prescribed by the statute, is like the statute action for the recovery of double damages for injury sustained by reason of a defective road, which is held to be entirely remedial. *Reed* v. *Inhabitants of Northfield,* 13 Pick. 100, 101 : So is the action for not setting out tithes ; *Lord Selsea* v. *Powell,* 6 Taunt. 297 ; and the action for removing property from demised premises, to prevent its being distrained for arrears of rent. *Stanley* v. *Wharton,* 9 Price, 301.

The claim, which is the subject of this bill, would have passed to Cook's executor or administrator, and might have been sued by him. *Moreton's case,* 1 Vent. 30. 1 Chit. Pl. (6th Amer. ed ) 78, 79.

The right given, by *St.* 9 Anne, to a loser of money at play, to recover it back from the winner, passes to the assignees of the loser, on his becoming bankrupt. *Brandon* v. *Pate*, 2 H. B. 308. *Brandon* v. *Sands*, 2 Ves. jr. 514. *Carter* v. *Abbott*, 2 Dowl. & Ryl. 575. *S. C.* 1 Barn. & Cres. 444.

This claim may be considered as a " debt " which passed to the plaintiff as assignee. It is made such by the statute, which gives an action of debt to enforce it. Cook himself might maintain that action, if the plaintiff cannot. But if he should recover, the plaintiff would be entitled to the fruits of the judgment for the benefit of creditors.

*Bartlett*, for the defendant. The 3d section of *c.* 35 of Rev. Sts. is partly remedial and partly penal; remedial, in restoring to the party the excessive interest paid by him; and penal, as to the additional twofold which he is authorized to recover.

The cases in 6 Taunt. & 9 Price respected a new trial merely; and the statutes there sued upon were held not to be of that class of penal statutes in which a new trial is refused to the plaintiff.

A right to recover a penalty cannot be assigned; nor a right of action for a tort. *Gardner* v. *Adams*, 12 Wend. 297. See also Eden on Bankruptcy, (2d ed.) 235. The claim of the plaintiff could not be sued by Cook's executor or administrator. 1 Williams on Executors, 508 – 516. The statute enables only " the party paying " usurious interest to " recover back threefold." It is therefore the personal right of such party only. *Boardman* v. *Roe*, 13 Mass. 105.

The case of *Brandon* v. *Pate*, in 2 H. B. 308, was not an action for a penalty, but merely to recover back the amount of money lost at play. And Eyre, C. J. held that there was nothing assignable till action brought. The decision in that case was on the terms of *St.* 5 Geo. II. *c.* 30. *Clark* v. *Calvert*, 8 Taunt. 750. *S. C.* 3 Moore, 110.

Hubbard, J. The object of the legislature in passing the *St.* of 1838, *c.* 163, under which the plaintiff claims to support this action, was to provide for the relief of insolvent debtors,

and for the more equal distribution of their property among all their creditors ; and it contains two general principles ; the one, that all the property of the debtor shall be produced for the benefit of his creditors ; and the other, that he shall be freely discharged from the debts which he is unable to pay ; and to obtain this discharge he is to make a full disclosure and delivery of all his estate to the persons appointed by law for that purpose.

The intent of the law being so clear, that all the property of the debtor shall be appropriated for the use of the creditors, any one, who affirms that a particular thing does not pass by force of the statute, must bring himself within its exceptions, or show conclusively *aliunde,* that it was the design of the makers of the law that the thing specified should not pass to the assignee.

The statute requires that the judge or master in chancery " shall, by an instrument under his hand and seal, assign and convey to the person or persons chosen or appointed assignees all the estate, real and personal, of the debtor, excepting such as may by law be exempted from attachment, with all his deeds, books, and papers relating thereto ; which assignment shall vest in the assignees all the property of the debtor, both real and personal, which he could by any way or means have lawfully sold, assigned or conveyed ; and the said assignment shall also vest in the assignees all debts, due to the debtor, or to any person for his use, and all liens and securities therefor, and all his rights of action for any goods or estate, real or personal, and all his rights of redeeming any such goods or estate ; and the assignees shall have power to redeem all mortgages, conditional contracts, pledges and liens, of or upon any goods or estate of the debtor, or to sell the same, subject to such mortgage or other incumbrance. And the assignees shall have the like remedy to recover all the said estate, debts and effects, in their own names, as the debtor might have had if no such assignment had been made." § 5.

The exceptions to this universal surrender are those few articles exempted from the common process of attachment, and such part of his estate as has been necessarily expended for the support of himself and family.

The word " debt " is of large import, including not only debts of record, or judgments, and debts by specialty, but also obligations arising under simple contract, to a very wide extent ; and in its popular sense includes all that is due to a man under any form of obligation or promise. And long ago it was held, as expressed by Blackstone, that " whatever the laws order any one to pay, that becomes instantly a debt which he hath beforehand contracted to discharge. On the same principle it is, (of an implied original contract to submit to the rules of the community whereof we are members,) that a forfeiture imposed by the by-laws and private ordinances of a corporation upon any that belong to the body, immediately creates a debt in the eye of the law," for which forfeiture the remedy is by action of debt. The same reason is applied to all penal statutes, that is, such acts of the legislature whereby a forfeiture is inflicted for transgressing the provisions therein enacted.  " The party offending is here bound by the fundamental contract of society to obey the directions of the legislature, and pay the forfeiture incurred to such persons as the law requires ; " to the aggrieved party or to any informer, or to the government itself.  3 Bl. Com. 158, 159.

And this leads us to the consideration, whether the terms " all debts due to the debtor," as used in the act, are broad enough to include, and were intended to embrace, such demands as those which the plaintiff seeks to recover in this action.

The argument is, that injuries to the individual, arising from personal torts, such as assault and battery, false imprisonment, malicious prosecution, defamation, &c. cannot be assigned ; as they partake in no sense of the nature of a contract : And so also the reasoning is extended to forfeitures under penal statutes, that they are strictly personal, and like other injuries to the person are not the subject of assignment.

This objection to the plaintiff's right of action has been pressed upon the consideration of the court, with much force and acuteness ; which makes it necessary, after a few remarks on the construction of statutes, to review very briefly the statutes against usury, existing, and which have existed, in this Commonwealth.

General statutes, or the written laws of the government, are usually arranged under three great divisions : Declaratory, which are expressive of the common law : Remedial, which are required in consequence of the errors in human judgments, or are rendered necessary by the various changes which are constantly taking place, as the community enlarges, and its concerns increase : Penal, or acts for the prevention and punishment of offences. And in ascertaining their meaning, it soon grew to be an axiom in the law, that remedial statutes should be construed liberally, and penal statutes strictly. But the rule prescribing the line between remedial and penal statutes was not well defined ; and the statutes against frauds were often both remedial and penal : As, where the statute acted upon the offender, it was taken strictly, but where it acted upon the offence, by setting aside the fraudulent transaction, it was to be ex pounded liberally. 1 Bl. Com. 88.

Usury was an offence at the common law, and the usurer was not only punished by the censures of the church in his lifetime, but was denied a christian burial ; and by the laws of Alfred the Great, and Edward the Confessor, if, after death even, a man was found to have been a usurer, his goods were forfeited to the crown, and his lands to the lord of the fee. The statute of 37 Henry VIII. c. 9, entitled " a bill against usu ry," revised the former acts and laws, and is the foundation of all the statutes prohibiting usury, from that day to this.

In Massachusetts, there have been laws restraining usury, from the first settlement of the country, to the present time. As early as the year 1641, the colony settled the rate of interest at eight pounds in the hundred ; treating usury as an offence, but prescribing no statute penalties. Anc. Chart. 201. But in 1693, 5 Wm. & Mary, an act was passed " for the restraining the taking excessive usury," and reducing the rate of interest to six pounds for the forbearing of one hundred pounds for a year, which provided that all bonds, contracts, &c. made for the payment of any principal or money lent or covenanted to be lent upon or for usury, whereupon or whereby there should be re-served or taken above the rate of six pounds in the hundred as

aforesaid should be utterly void ; and all persons who should, upon any contract, take &c. should forfeit and lose, for every such offence, the full value of the goods and moneys, or other things so lent, exchanged, bargained, sold, or agreed for, one moiety to the use of the government of the province, and the other moiety to the informer that should prosecute, complain, or sue for the same. Anc. Chart. 257. And in 23 Geo. II., an additional act was passed, by which proof of the usury might be made by the oath of the debtor. Anc. Chart. 573. These statutes were united, and reënacted in 1783, (c. 55,) with only a few verbal alterations ; so that in fact the laws against usury remained the same in Massachusetts for a period of 133 years. This and the preceding acts were, without any question, penal statutes ; for St. 1783, c. 55, is classed among them in the " act for the ease of the citizens concerning actions upon penal statutes." St. 1788, c. 12.

In March 1826 the St. of 1783, c. 55, was repealed. The St. of 1825, c. 143, was passed, by which the contract, wherein usurious interest was reserved, was for the first time held valid, and only the excessive interest was avoided. This statute, however, met with so little favor from the community, that at the next session of the legislature, an additional act was passed, St. 1826, c. 27, the important provisions of which are embraced in the Rev. Sts. c. 35, §§ 1, 2, 3, 4. The title in the revised statutes is " general provisions respecting trade ; " and in that division of it relating to the interest of money, it establishes the rate of interest at six dollars for one hundred dollars for a year, and then declares " that no contract or assurance for the payment of money, with interest at a greater rate than is allowed by the preceding section, shall be thereby rendered void ; but whenever in any action, brought on such contract or assurance, it shall appear, upon a special plea to that effect, that a greater rate of interest has been directly or indirectly reserved, taken or received, than is allowed by law, the defendant shall recover his full costs, and the plaintiff shall forfeit threefold the amount of the whole interest reserved or taken, and shall have judgment for the balance only, which shall remain due after deducting said threefold amount."

Instead of a forfeiture of the whole debt, and subjecting the party to a criminal prosecution by indictment, or to a *qui tam* action by a common informer, the offence is now merged into a private offence to the individual ; and no other person can inter·fere ; neither can the Commonwealth. And the party's remedy for the injury sustained is by an action of debt, or by a bill in chancery ; thus giving the party relief in equity, as well as at law, in order the better to enable him to prove his case.

Admitting then, as the fact was, that the original statutes were clearly penal, the present law, while it is penal to some extent in its consequences, is in fact so modified, that it may be said to be adopted into the family of remedial statutes, and, though a brother of the half blood, is nevertheless entitled to its share of the inheritance ; or, in other words, has the like privilege of a liberal construction, with those statutes which are wholly remedial.

But it is pressed by the defendant's counsel, that the forfeiture of threefold the amount of the interest reserved, being in its nature penal, it resolves the demand into a mere claim for redress for a personal tort, which cannot be assigned. But in answer to this, the plaintiff's counsel has cited cases, arising upon statutes where penalties are imposed, in which the learned judges have decided that they were in their nature remedial, and as such entitled to a liberal construction. *Stanley v. Wharton,* 9 Price, 301, was an action of debt founded upon the statute of 11 Geo. II. *c.* 19, against the defendant for assisting a tenant of the plaintiff in fraudulently removing property from demised premises to prevent the plaintiff from distraining them for arrears of rent ; for which injury double the value of the goods removed is given by the statute. The verdict was for the defendant, and a new trial was moved for, on the ground that the verdict was against the evidence ; and the counsel insisted, as a preliminary objection, that this was a penal action, and therefore within the alleged rule, that a new trial should not be granted where a verdict has been found for the defendant, when sued on a penal statute. But the court held that the statute was purely and entirely remedial, providing for giving double the

value for the aggravation of the injury done to the landlord by the wrongful removal and concealment of the property, and this also where the action was not against the tenant.

In a case arising in this Commonwealth, *Reed* v. *Inhabitants of Northfield*, 13 Pick. 94, which was an action on *St.* 1786, *c.* 81, to recover double damages for an injury to the plaintiff, caused by a defect in a highway, the court in giving judgment say, " we think the action is purely remedial and has none of the characteristics of a penal prosecution. All damages for the neglect or breach of duty operate to a certain extent, as punishment ; but the distinction is, that it is prosecuted for the pur pose of punishment and to deter others from offending in like manner. Here the plaintiff sets out the liability of the town to repair, and an injury to himself from a failure to perform that duty. The law gives him enhanced damages ; but still they are recoverable to his own use, and in form and substance the suit calls for indemnity."

There are cases, however, which have been cited, that are more analogous to the present, and which aid us in coming to a correct conclusion in the present action. *Brandon* v. *Pate*, 2 H. B. 308, was an action of debt by the assignees of a bankrupt, on *St.* 9 Anne, *c.* 14, to recover from the winner money lost at play by the bankrupt before his bankruptcy, in which the objection was taken, that the assignees could not maintain the action, since there was not such a debt due to him as could be vested in them by the assignment, and that the right of action was personal. And though C. J. Eyre was of opinion that no duty is fixed in the loser till the action is brought, yet the court, notwithstanding his dissent, held that the action was maintainable, that the act was remedial, and that the money thus lost and paid was the property of the loser, and must be considered as a part of the bankrupt's estate which had wrongfully passed to the winner, and so the assignee had a right to it, and ought in reason to sue for it.

*Brandon* v. *Sands*, 2 Ves. jr. 514, was a bill in equity, in which the plaintiffs, as assignees of a bankrupt, prayed a discovery in support of an action at law brought on *St.* 9 Anne,

*c.* 14, to recover money lost at play. The bill was sustained, and it was decided, that " where the statute gives an action to the party grieved, there is an interest vested in him. The lim iting the time is to let in the penal action by the common informer ; but while the action rests in the party injured, it is a vested interest in him, which is a common and acknowledged ground of law."

From these views, it is manifest, that the interest of Cook, the insolvent debtor, was a vested interest and not a mere personal right ; and unless it can be clearly shown from the statute, that such an interest was not intended to be passed to the assignee, it becomes, by force of the assignment, vested in him.

But the language of the statute is broad and comprehensive. It reaches all the estate and choses in action of the debtor. On the one hand, it frees him from his obligations ; on the other, there is no clause which excepts such a claim as this, nor do we see any reason for such exemption. It is very certain that if a creditor·of the insolvent should attempt to prove a note under the commission, it would be the duty of the assignee to reduce the amount, if usurious interest had been taken on it, or was reserved in it ; and in this manner the creditors would be benefited by such reduction. Why should they not have the advantage of it, where the debtor has paid the usurious demand, prior to the insolvency, and within the time limited by the statute for recovering it ? If the insolvent debtor alone could recover the threefold amount given by the statute, and he should not be held accountable after its receipt, to his assignees, it would counteract the intention of the statute, and defeat its wise provision that all the estate of the bankrupt shall be divided among his creditors. The tendency also of such a limited construction of the statute would be to produce fraud and collusion between the borrower and lender, or at least to make debtors more reckless and usurers more greedy. On the other hand, the knowledge, that the assignee can in his own name recover threefold the amount of excessive interest paid or reserved, will operate beneficially for both the debtor and his honest creditors,

by restraining persons, in some measure, from the commission of the offence intended to be prevented by the statute.

It is not necessary here to determine the point which has been started, whether an executor or administrator could maintain this action : It is sufficient for this case to say, the statute expressly provides " that the assignees shall have the like remedy to recover all the said estate, debts, and effects in their own names, as the debtor might have had if no such assignment had been made." § 15. And this clause of the statute we think, disposes of the objection that the action cannot be maintained in the complainant's name. The same objection was raised, substantially, in the cases of *Brandon* v. *Pate*, and *Brandon* v. *Sands*, before cited. In the latter case the Lord Chancellor said, " the court of law was of opinion, and very rightly I think, that the action was brought properly in the name of the assignees." And if an action were brought by Cook himself against the defendant, and he should recover, he would be bound, I think, to pay over the money to his assignee, for the benefit of his creditors.

In conformity with this opinion, the bill and answer, with the evidence, will be referred to a master to report the amount to be recovered by the plaintiff, if his proof sustains his action.