SIMEON TUCKER *vs* PHILIP H. DRAKE & another。

It is not a fraud upon creditors nor an act in violation of the insolvent laws for an insolvent debtor to give new notes in exchange for notes dated before the passage of *St.* 1855, *c.* 238, for the purpose of extinguishing his old debts and thus entitling himself to hold his homestead; but in such case if the debtor does not disclose his purpose and assigns a different reason for the exchange, and the creditors accept the new notes without understanding that their rights will thereby be impaired, the new notes will not, while in the hands of original parties, be held to extinguish the old ones, but will be considered merely as renewals of them, and therefore the debtor will have no right to a homestead as against them。

HOAR, J. The plaintiff brings his bill against his assignees in insolvency, asking to have a homestead set off to him in the real estate which he occupied when he went into insolvency。 It is admitted that he is entitled to it, except so far as his right is affected by the exception in *St.* 1855, *c.* 238. That statute exempted from levy on execution the homestead of a householder, to the value of $800 ; but by § 3 it is provided that " no property by virtue of the act shall be exempted from levy for any debt contracted previous to the passage of this act." The parties agree that one debt, due to Mrs. Reupske, of $100 and some interest, comes under this provision ; and the only question argued is, whether there are any other debts to which it applies.

The evidence establishes the fact that the debtor, after he became insolvent, and a short time before he filed his petition in insolvency, owed several notes, amounting in the whole to more than $800, bearing date prior to the passage of *St.* 1855 ; that, ¬ith the intention and for the purpose of securing to himself the homestead exemption, he prevailed upon the holders of these notes to exchange them for new notes of like amount; that he did not disclose to them his purpose in procuring the exchange, but gave as a reason for asking it that the old notes were nearly covered with indorsements of interest, and that the new ones were better looking ; and that the holders were not aware that taking new notes would affect in any manner their rights or his responsibility upon them.

The assignees deny that the insolvent can derive any benefit

from this exchange of notes, upon three grounds: 1st, That it was a fraud upon the holders of the notes; 2dly, that the transaction was a fraud upon the insolvent law, and therefore invalid in law against them; and 3dly, that the notes are still debts contracted before the passage of the act of 1855. We are of opinion that neither of the first two grounds can be maintained.

1. The insolvent is not shown to have made any false statement to the holders of the notes. He had a purpose in procuring their consent to the contract, which he did not disclose, but he was under no legal obligation to inform them as to their legal rights. Nor is the fact that a person who makes a contract knows that he is insolvent, and does not disclose it to the other party, sufficient in general to avoid the contract. The debtor gave the creditors all that he agreed to give them. He did no act and made no statement which deceived them. He designed a consequence to the bargain, which he supposed the law would attach to it, different from that which they understood; and he did not communicate his purpose. Whatever may be the requirements of the highest morality, this cannot be held sufficient in law to avoid the contract.

2. The change in the form of the debts, although made when the debtor knew that he was insolvent, was not in fraud of the insolvent law. The right of the assignees is wholly derivative, and is no greater than that of the creditors with whom the exchange of notes was made. If a debtor, knowing that he is unable to pay his debts, purchases property exempt from levy on execution, he exercises a privilege which the law gives him, and wrongs no one. If he buys provisions for his family, or a cow, or necessary clothing, he merely puts his property in a shape which the humanity of the law authorizes. And there is nothing to distinguish the exemption of a homestead from the like exemption of personal property.

The policy of the insolvent law is as clear in the provisions which it makes for the debtor as in those which it makes for creditors. The debtor, by securing a homestead for himself and family, whether by an arrangement with creditors who might levy on it, or by the purchase of a house, or by moving into a

house which he already owns, takes nothing from his creditors which the law has secured to them, or in which they have any vested right. He conceals no property. He merely puts his property into a shape in which it will be the subject of a beneficial provision for himself which the law recognizes and allows.

3. But the third point taken by the respondents is more substantial, and in our judgment is decisive.

It is the settled law in this commonwealth that giving a negotiable promissory note is a payment of a simple contract debt, unless it appears that it was not so intended. But it has been held sufficient evidence to meet and repel this presumption, and to show that the note was not intended as a payment, if, by treating it as a payment, the creditor would lose the advantage of some security; as a mortgage, guaranty, or the like. Now in this case, if the new notes taken were regarded as payment of the earlier ones, the creditors would lose the advantage of the exemption of the debtor's real estate from the right of homestead, which the law gave them. It is true that the debtor intended that the transaction should produce this result, and the creditors were ignorant that it would have any effect upon their rights; so that it may be said there could not have been an intention that it should not be a payment. But we are of opinion that this is rather specious than sound. Whatever was the purpose of the debtor in his own mind, he did not communicate to the holders of the notes that anything else was proposed than a simple renewal of the notes. The reasons given for the exchange, that the old notes were covered with indorsements, or that the new ones were on handsomer paper, or that some persons thought an old note not so good as a new one, would lead to no other conclusion. The notes taken did not vary the obligation of those for which they were exchanged in any particular except by having a new date, which was merely a written admission of what the law implied from the existing facts. Some of the new notes were dated not according to the fact when executed, but to correspond to the last payment of interest.

We think the evidence shows that the creditors were in substance informed that a renewal was intended, and that this was

the transaction to which they assented. That they were not aware that the legal effect of a renewal would differ from that of the payment of one note by another would then be immaterial. In *Pomroy* v. *Rice*, 16 Pick. 24, it is said by Mr. Justice Wilde that a direction to renew a note, although by making it payable to a new payee, *ex vi termini* shows that the exchange of one note for the other was not intended to be a payment. And we find no case reported in this commonwealth in which the mere exchange of one note for another, without change of amount, parties or time of payment, has ever been held to be a payment of the first. The debtor himself, in his examination in insolvency, says that he renewed these notes, and speaks of them as renewals.

The proof of the new notes in insolvency, if they were mere renewals, would not affect the rights of the creditors. Within the meaning of *St.* 1855, therefore, they were still debts contracted before the passage of that act. The date of the notes merely gives the time of the new promise to pay a debt already contracted.

It is not necessary to decide whether the new notes would be held to be new obligations in the hands of third persons, if they had been transferred by indorsement. This case is between the original parties; and the transaction between them does not, for the reasons given, appear to us to involve the contracting of any new debt.

The plaintiff is therefore not entitled to the homestead which he claims, and the bill must be

*Dismissed, with costs.*

*N. C. Berry*, for the plaintiff.

*B. F. Brooks*, for the defendants.