STEPHEN BOWEN & another, executors, *vs.* ABBY E. HOXIE
& others.

Suffolk. March 27. — Sept. 5, 1884. DEVENS & COLBURN, JJ., absent.

A testator left a widow and six children by her, and three children of a former
marriage, surviving him. After his death, another child was born. By his will,
made three years before, besides other bequests to his wife and his nine children
then living, he left a sum in trust to pay the income to his wife during her life,
and, after her decease, to pay the income annually to "my surviving children
by my said wife," with an ultimate distribution of the principal among them.
There was no other provision for the posthumous child, by the will or otherwise.
The residue of the estate was disposed of, "after providing for the annuity
funds, payment of debts, and legacies hereinbefore mentioned." *Held,* that such
child came within the provisions of the Pub. Sts. *c.* 127, § 22, entitling him to
the same share of his father's estate that he would have been entitled to if his
father had died intestate. *Held, also,* that, under the Pub. Sts. *c.* 127, § 27, his
share should be taken entirely from the residuary bequest in the will.

BILL IN EQUITY, by the executors of the will of Timothy W.
Hoxie, to obtain the instructions of the court as to the construc-
tion of the will. Hearing before *Holmes,* J., who reported the
case for the determination of the full court. The facts appear
in the opinion.

*N. C. Berry & J. K. Berry,* for the widow of the testator and
their children living at his decease.

*S. B. Allen & A. Hemenway,* for the children of the testator
by a former marriage.

*J. E. Wetherbee,* for a posthumous child of the testator.

C. ALLEN, J. The testator died on December 18, 1882, leav-
ing a widow and six children by her, and three children of a
former marriage. In March, 1883, another child, Pauline, was
born. The testator by his will, dated February 28, 1880, be-
sides other bequests to his wife and his nine children then living,
left the sum of $50,000 in trust, to pay the income to his wife
during her life, and, after her decease, "to pay over the interest
and income thereof annually in equal shares to my surviving
children by my said wife Abby Elizabeth," with an ultimate
distribution of the principal among them. There was no other
provision for Pauline, by the will or otherwise. The Pub. Sts.
*c.* 127, § 22, provide that, "when a child of a testator, born
after his father's death, has no provision made for him by his

father in his will or otherwise, he shall take the same share of his father's estate that he would have been entitled to if his father had died intestate."

The first question is, whether Pauline is entitled to the same share of her father's estate that she would have been entitled to if he had died intestate. It is agreed that such share would amount to $19,104.24. It is contended in her behalf, that, even if, by the true construction of the above clause of the will, she is included among the "surviving children," (which is denied,) this is not such a provision for her as the statute contemplates. This question appears never to have been settled in this State, although a similar statute has long been in existence. Gen. Sts. c. 92, § 26. Rev. Sts. c. 62, § 22. St. 1783, c. 24, § 7. Prov. St. 1700–1 (13 Will. III.) c. 4, § 1; 1 Prov. Laws (State ed.) 429.

In the opinion of the court, the claim in behalf of Pauline must be supported. It is clearly to be inferred, on looking through the will, that at the time of making it the testator did not have in mind the birth of a posthumous child. He mentions his nine living children by name. His property was large. The will would have full effect without regard to Pauline. The share, if any, which she would receive, would come to her only as one of a class. The provision for her is an unintentional one. The most that can be said is, that the provision for a class happens to be broad enough to include her. It does not, under any construction, furnish any certain means for her maintenance and education during that part of her life when she would be unable to do anything towards her own support. It might happen that a child so left would be entirely dependent upon public support or the charity of individuals. She might live long, marry, have children, and die, without ever coming into the enjoyment of her share of an interest to which as one of a class she might be entitled. Such a result would not only shock the testator himself, but would be contrary to the common feelings of humanity. A strong case may be put, by way of illustration. If a rich man, for some time married, but without children or other near relatives, should die, leaving a will made two or three years before, in which he gave his property in trust to pay to his widow the whole income, and, contingently, portions

of the principal, during her life, and after her death to pay some trifling sum to his heirs at law then surviving, and the whole of the residue to some public object; and if the widow should die a few months thereafter, having given birth to a child, who survived; upon the construction of the will which is contended for, the child would be virtually disinherited, and the great bulk of the property would go to an object selected by the testator in his despair of offspring. If such were the necessary construction of the statute, no doubt the Legislature would hasten to change it. But it is not necessary, and we do not think it is reasonable, to hold that a provision for a class, within which an uncontemplated posthumous child happens to fall, excludes the child from a proportionate share of the estate. The statute rather means to include cases where a child born after the father's death has no direct, specific, or intentional provision made for him.

This construction derives some aid from the language of the preceding section of the statutes, by which, if a testator unintentionally, or by accident and mistake, omits to provide in his will for any of his living children, they will take the same share of his estate that they would have been entitled to if he had died intestate. Pub. Sts. *c.* 127, § 21. The construction of § 22 should be equally broad. If a father unintentionally omits to provide in his will or otherwise for a child born after his death, or, in other words, if he omits to make a provision which is intended to be for such child, the child under this section will take the same share of his estate that he would have been entitled to if the father had died intestate. The statute was designed to come in and correct the injustice which would result from establishing and carrying out strictly the provisions of a testator's will in which the claims of a posthumous child were unintentionally overlooked; both for the sake of giving effect to the presumed intention of the testator, and also probably in part with a view to prevent the chance of the child's becoming a public charge.

This construction is in accordance with that adopted by the courts of several States, under statutes substantially similar. *Waterman* v. *Hawkins*, 63 Maine, 156. *Potter* v. *Brown*, 11 R. I. 232. *Willard's estate*, 68 Penn. St. 327. *Holloman* v. *Copeland*, 10 Ga. 79. *Talbird* v. *Verdier*, 1 Desaus. 592. It is also in

accordance with the spirit of the decisions, that marriage and the birth of a posthumous child are an implied entire revocation of a will executed when single. *Doe* v. *Lancashire*, 5 T. R. 49. *Edwards's appeal*, 47 Penn. St. 144.

We have then to determine whether Pauline's share shall be taken entirely from the residuary bequest, or whether other legacies shall contribute towards it. The statute immediately applicable is to be found in the Pub. Sts. *c.* 127, § 27, which provides that, in such cases, the child's portion "shall be taken equally from all the devisees and legatees in proportion to the value of what they respectively receive under such will, unless in consequence of a specific devise or legacy or of some other provision of the will a different apportionment is found necessary in order to give effect to the testator's intention regarding that part of his estate which passes by his will." Sections 28 and 29 contain substantially similar provisions for contribution, when property is taken from a devisee or legatee for payment of debts; and § 32 provides that, when property is taken from a devisee or legatee for the widow's dower, all the other devisees and legatees shall contribute, "but no devisee or legatee shall be held to contribute who is exempted therefrom by the provisions of the will." The case of *Blaney* v. *Blaney*, 1 Cush. 107, arose upon the St. of 1839, *c.* 96, which is in substance the same as § 32 above mentioned, and the court held that, where there is a residuary devisee, all the other devisees and legatees, whether their devises and legacies are technically specific or not, are exempted from contribution by the provisions of the will. Mr. Justice Metcalf said: " This exemption results from the nature and effect of a disposition of property by a residuary devise or bequest. Nothing is given by such a devise or bequest, except on a contingency that something shall remain after all paramount claims on the testator's estate are satisfied.. The claim of dower, the demands of creditors, the rights of posthumous children not provided for, of children or the issue of deceased children, for whom the testator unintentionally omits to provide, and of other legatees and devisees, must all be satisfied, in the order prescribed by law, before the residuary devisee can take anything." p. 117. See also *Webster* v. *Webster*, 105 Mass. 538. The language of Mr. Justice Metcalf is an explicit *dictum*

to the effect that the share of this posthumous child must come out of the residue, unless indeed there is something in the other language of the will to show a different intention; and we are satisfied that such is the just construction of the statute.

The question remains, whether there is anything to show such different intention. In the tenth article, the testator disposes of all the rest, residue, and remainder of his estate, " after providing for the annuity funds, payment of debts, and legacies hereinbefore mentioned." A momentary doubt might arise whether this specific enumeration of annuity funds, debts, and legacies before mentioned would include the amount required to satisfy the rights of a posthumous child, and so whether the residuary bequest is not put upon a somewhat larger basis than ordinarily. But we think it is still only a residuary bequest of what is left of his whole property after making all necessary applications of other portions of it. Even looking narrowly at the words used, " debt" has been declared to be a word of large import, and in its popular sense to include all that is due under any form of obligation or promise. " Whatever the laws order any one to pay, that becomes instantly a debt, which he hath beforehand contracted to discharge." 3 Bl. Com. 160. *Gray* v. *Bennett*, 3 Met. 522, 526. In *Blaney* v. *Blaney*, the language was, the residue " not hereinbefore disposed of."

The widow consents that her one tenth part of the residue shall contribute, and we therefore have no occasion to determine whether, being given in lieu of dower, this interest would or would not in law be exempt.

The result is, that Pauline's share must be taken from the residuary bequest. *Decree accordingly.*