**In re Gerald B. MILLER and Margaret S. Miller, Debtors.**

**Bankruptcy No. 89–12573–CJK.**

United States Bankruptcy Court,
D. Massachusetts.

April 23, 1990.

Denise Pappalardo, for Marion Pierson.

Allen H. Roffman, Trustee.

Herbert Rogers, Canton, Mass., for debtors.

CAROL J. KENNER, Bankruptcy Judge.

Creditor Marion Pierson has filed an objection to Debtor Gerald B. Miller's claim of a homestead exemption. The Chapter 7 Trustee supports the objection. The Debtors strenuously oppose it.

The facts that give rise to this objection are not in dispute. In January, 1982, Pierson commenced a negligence action against Gerald B. Miller in the Superior Court of the Commonwealth of Massachusetts for injuries Pierson sustained in an automobile accident caused by Miller. The case finally went to trial in March, 1989; and in June, 1989, the Superior Court entered judgment for Pierson in the amount of $1.2 million. In February, 1989, however, Gerald Miller recorded a declaration of homestead under G.L. c. 188.

On August 31, 1989, Gerald Miller and his wife, Margaret S. Miller, filed a joint petition under Chapter 7 of the Bankruptcy Code. Among the bankruptcy schedules the Debtors filed with their petition was Schedule B–4, a list of the property they claimed as exempt. Schedule B–4 indicated that Gerald Miller was claiming the exemptions available under the laws of the Commonwealth of Massachusetts, including the homestead exemption in the amount of $100,000, and that Margaret Miller was claiming the exemptions available under the Bankruptcy Code, 11 U.S.C. § 522(d). On November 3, 1989, however, the Debtors amended their list of claimed exemptions by substituting a new Schedule B–4 for the original one. On the new schedule, both Debtors claim the Commonwealth exemptions, including the homestead, and neither claims any federal exemptions.

The Massachusetts homestead statute, G.L. c. 188, § 1 et seq., prevents creditors and trustees in bankruptcy from reaching a portion of the homeowner's equity in his or her home. See Lavien and Mencher, *Eclipse of Tenancy by the Entirety and Reappraisal of Homestead as They Relate to Bankruptcy*, 67 Mass.L.Rev. 170 (1982). The value of the exemption has increased significantly in the last two decades, from $4,000 in 1970 (by virtue of St.1939, c. 32, § 1) to $100,000 under current law, G.L. c. 188, § 1 (as amended by St.1985, c. 623); and its value is higher for elderly and disabled persons. See G.L. c. 188, § 1A. In order to acquire the benefit of the home-

stead exemption, a homeowner need only satisfy the recording requirements set forth in G.L. c. 188, § 2. Neither Pierson nor the Trustee has alleged that Gerald Miller failed to do so.

Pierson argues that Gerald Miller's homestead exemption should be disallowed for three reasons. First, the Debtors should be deemed to have elected the federal exemptions, not the Massachusetts exemptions, because on their original Schedule B-4, the husband chose the state exemptions and the wife chose the federal; section 522(b) of the Bankruptcy Code provides that where joint debtors disagree, they are deemed to elect the federal exemptions specified in 11 U.S.C. § 522(d). Second, under G.L. c. 188, § 1(2), the declaration of homestead does not remove the home from the reach of creditors whose debts arose prior to the acquisition of the homestead estate. And third, Gerald Miller's declaration of homestead should be avoided as a fraudulent conveyance within the meaning of G.L. c. 109A.

### 1. *Availability of State Exemptions*

Pierson's first argument—that because the Debtors initially did not agree upon a common exemption scheme, they should both be deemed to have elected the federal exemptions—is rendered moot by the Debtors' having amended their list of claimed exemptions. Both now claim the Massachusetts exemptions.

■ Bankruptcy Rule 1009(a) permits the Debtors to amend their list of claimed exemptions as a matter of course at any time before the case is closed. And the courts hold that "an exemption should be allowed no matter when it is claimed absent a showing of bad faith by the debtor or prejudice to creditors." *In re Andermahr*, 30 B.R. 532, 533 (9th Cir. BAP 1983), citing *Matter of Doan*, 672 F.2d 831, 833 (11th Cir.1982); see also *Tignor v. Parkinson*, 729 F.2d 977, 978 (4th Cir.1984) ("[A] court ordinarily does not have discretion to

deny leave to amend or to require a showing of good cause." *Id.* at 978); *Lucius v. McLemore*, 741 F.2d 125, 126–127 (6th Cir. 1984) (Debtor may amend at any time before case is closed, but not in bad faith or where property has been concealed.); *Matter of Gershenbaum*, 598 F.2d 779 (3rd Cir.1979); *Matter of Williamson*, 804 F.2d 1355, 1358 (5th Cir.1986). The Court has no reason to believe that the Debtors amended their list of exemptions in bad faith or that the amendment would prejudice creditors. Prejudice to creditors does not occur merely because a claimed exemption, if deemed timely, would be granted. *Matter of Doan*, 672 F.2d at 833.

### 2. *Exception for Debts Contract Prior to Declaration*

Pierson's second argument is that pursuant to G.L. c. 188, § 1(2), a declaration of homestead does not remove the homestead from the reach of creditors whose debts arose prior to the declaration.[1] The Debtor agrees but argues that Pierson's debt did not arise until she obtained judgment against Gerald Miller. In support of this argument, the Debtor cites a 1906 decision of the Massachusetts Land Court, *Sullivan v. Begaso*, Land Ct.Dec., p. 277.

In that case, Begaso recorded a declaration of homestead shortly after having committed a tort (an assault) against one Monize. Monize subsequently obtained judgment against Begaso for the tort and sold Begaso's homestead at an execution sale to Sullivan, who then sued Begaso to recover possession of the property from him. Begaso argued in defense that he was entitled to the benefits of the homestead exemption because Monize's execution had not been levied for a debt contracted before the recording of the homestead declaration, the same defense interposed by the Debtors in the present case. The Land Court agreed, stating simply that "[t]here

---

**1.** General Laws c. 188, § 1(2) (as amended by St.1989, c. 475, § 1) states: "Said estate [of homestead] shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts of legacies except in the following cases: ... (2) for a debt contracted prior to the acquisition of said estate of homestead."

is no 'debt' under a chose in action in tort until after judgment." *Id.* at 279.[2]

■ The Land Court's decision is directly on point and remains the only published decision in which a court of the Commonwealth has passed on the present issue. Nonetheless, it is not dispositive. Like a federal court sitting in diversity, a Bankruptcy Court ruling on an issue of state law must rule as it believes the highest court of the state would rule. When the highest court has not addressed the issue, the Bankruptcy Court should not regard lower court rulings on the issue as dispositive. Rather, it should attempt to predict what the highest court would do and to that end should accord proper regard to decisions of other courts of the state. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Flotech, Inc. v. E.I. DuPont de Nemours Co.*, 627 F.Supp. 358, 371–372 fn. 10 (D.Mass.1985); *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 118 (3rd Cir.1987). So this Court's first duty is to determine how the Commonwealth of Massachusetts Supreme Judicial Court would rule.

The Supreme Judicial Court would no doubt begin with the language of the statute itself.[3] The crucial language is set forth in G.L. c. 188, § 1(2), which provides that the homestead estate shall be exempt from the laws of conveyance, descent, devise, etc., "except in the following cases: ... (2) for a debt contracted prior to the acquisition of said estate of homestead."

G.L. c. 188, § 1(2). The precise issue presented is thus whether a cause of action in tort, which arose and on which suit was brought before the homestead estate was acquired, but which went to judgment only afterwards, is "a debt contracted prior to the acquisition of said estate of homestead."

The Supreme Judicial Court has several times in its history (though not recently) considered the meaning of the phrase "debt contracted" as it has been used in the current and earlier versions of the Commonwealth's homestead law.[4] In *Rice v. Southgate*, 82 Mass. (16 Gray) 142 (1860), the court held that the contract of a principal with his surety to indemnify him for any payment the surety may make to the principal's creditor becomes a "debt contracted" from the time when the surety becomes liable for the debt of the principal, not when the surety later pays the debt. In *Thurston v. Maddocks*, 88 Mass. (6 Allen) 427 (1863), the court held that a cause of action on an account current is a "debt contracted" as early as the date of the last charge on the account. In *Stevens v. Stevens*, 92 Mass. (10 Allen) 146 (1865), the court held that, when someone borrows money to purchase a homestead and later gives the lender a confirmatory note, the obligation to repay the loan becomes a "debt contracted" when the loan is first made, not when the note is later given to memorialize it. And similarly, in *Tucker v. Drake*, 93 Mass. (11 Allen) 145 (1865), the court held that a debt on a note given after the acquisition of a homestead to renew a

---

**2.** The court neither justified nor explained its conclusion on this point except by citing five cases: *Stevens v. Stevens*, 10 Allen (92 Mass.) 146 (1865); *Rice v. Southgate*, 16 Gray (82 Mass.) 142 (1850); *Pelham v. Aldrich*, 8 Gray (74 Mass.) 515 (1858); *Child v. Boston & Fairhaven Iron Works*, 137 Mass. 516 (1884); and *Savage v. Shaw*, 195 Mass. 571, 81 N.E. 303 (1907).

**3.** See *International Organization of Masters, etc. v. Woods Hole, Martha's Vineyard & Nantucket Steamship Authority*, 392 Mass. 811, 813, 467 N.E.2d 1331 (1984):

The familiar rule of statutory construction requires us to interpret a law so as to effectuate the intent of the legislature in enacting it.... The intent of the Legislature is to be determined primarily from the words of the

statute, given their natural import in common and approved usage, and with reference to the conditions existing at the time of enactment.... This intent is discerned from the ordinary meaning of the words in a statute considered in the context of the objectives which the law seeks to fulfil.

**4.** The words "debt contracted" have appeared in at least three exceptions to the availability of the homestead exemption: the exception "for a debt contracted previous to the acquisition of said estate of homestead," G.L. c. 188, § 1(2); the exception "for a debt contracted for the purchase of said home", G.L. c. 188, § 1(3); and in earlier versions of the law, the exception "for any debt contracted previous to the passage of this act," St.1855, c. 238, § 3.

note given before the acquisition was a "debt contracted" when the original note was given.

None of these cases involved obligations arising out of torts. Rather, all involved contracts: a surety agreement, an account current, and two promissory notes. The Supreme Judicial Court did not set forth in these cases a general rule defining when debts are deemed to have been contracted, but clearly the court did not think it necessary for judgment to have entered on a contract before it could give rise to a "debt contracted".

Would the Supreme Judicial Court say the same for liability arising out of personal injury torts? Several of its decisions on the meaning of "debt" give good cause to conclude that it would not. The court's decisions indicate that, in 1851, when Massachusetts enacted the earliest predecessor of its current homestead law and incorporated into it the word "debt" (which has been carried forward since then into the current form of the law), the word had a narrow legal meaning that did not include liability for torts not reduced to judgment. It included only ·obligations for liquidated damages or (at the outside) for damages that could be ascertained by simple mathematical calculation from known facts, not liability for unliquidated damages. Therefore, it could not include liability for personal injury torts not reduced to judgment.

Two cases hold expressly that the term "debt" does not include within its purview a claim for tort damages not reduced to judgment. In the first, *Zimmer v. Schleehauf,* 115 Mass. 52 (1874), the issue raised was whether a cause of action in tort to recover damages for slander and malicious prosecution was a "debt contracted by the bankrupt" within the meaning of then existing federal bankruptcy law, which permitted claimants to prove against the bankruptcy estate (and therefore to recover from the estate on account of) only those "debts" that existed at the time of the adjudication of bankruptcy. At the time of the adjudication of bankruptcy, the plaintiff claimant had obtained a verdict in his favor, but not yet a judgment upon the verdict.[5] The defendant bankrupt conceded, and the Supreme Judicial Court held, that the plaintiff's tort claim

> was not "a debt existing at the time of the adjudication of bankruptcy," because a claim for damages in an action of tort does not become a debt by verdict before judgment.

*Id.* at pp. 52–53. The Court went on to say that the tort claim was not even a "contingent debt [or] contingent liability contracted by the bankrupt" within the meaning of the bankruptcy act because "[it] did not arise out of any contract, or any injury to property, but out of a personal tort." *Id.* at p. 53. Therefore, the Court ruled that, because the plaintiff's tort cause of action was not a debt provable against the bankruptcy·estate, the defendant's bankruptcy would not stay the plaintiff's state court tort action.

In the second case, *Child v. Boston & Fairhaven Iron Works,* 137 Mass. 516 (1884), the issue presented was whether a corporation's liability for damages arising from its infringement of letters patent was, before judgment was obtained against the corporation, a debt within the meaning of a statute making the officers of a corporation liable for certain of its "debts." The Court ruled that such liability was not a debt within the meaning of the statute, and in the doing so, stated

> [t]he word "debt" ... [does] not in [its] legal sense ordinarily include liabilities for torts not reduced to a judgment.

*Id.* at p. 519. The Court also rejected as "unsupported by any direct authority, either before of since," the expansive definition of debt adopted by Mr. Justice Story in *Carver v. Braintree Manuf. Co.,* 2 Story 432, 5 F.Cas., no. 2485, an early federal case in which Mr. Justice Story apparently interpreted an earlier version of the statute at issue in *Child.* Story had held that even

---

**5.** The case was before the Supreme Judicial Court on the defendant debtor's appeal from the trial court's denial of his motion to stay entry of judgment pending proceedings in the Bankruptcy Court. He argued that his liability to the plaintiff was a "provable debt," suit upon which should be stayed under the stay provision of the Bankruptcy Act.

a claim for unliquidated damages arising from a tort ("ex delicto") should be deemed a debt within the meaning of the statute because " 'if ultimately it ends in a debt, as a judgment for damages does, ... its character as a debt relates back to its origin.' " *Child*, 137 Mass. at 520, quoting from *Carver v. Braintree Manuf. Co.*, 2 Story at 451, 5 F.Cas., no. 2485.

*Child*'s rejection of Story's broad definition of debt was reaffirmed in *H.G. Kilbourne Co. v. Standard Stamp Affixer Co.*, 216 Mass. 118, 103 N.E. 469 (1913) ("Kilbourne"), in which the Court ruled that a cause of action for unascertained damages for breach of an executory contract was not a "debt" within the meaning of a statute permitting "suits by creditors to reach and apply, in payment of a debt." *Kilbourne*, 216 Mass. at 122, 103 N.E. 469, citing St.1910, c. 531, § 2. *Kilbourne* is important because in reaching its conclusion therein, the Supreme Judicial Court gave substantial weight to "generally accepted definitions of debt," *id.* at pp. 122–123, 103 N.E. 469, especially the definition current in 1851, when the first Massachusetts reach and apply statute was enacted and, coincidentally, when the earliest version of the Massachusetts homestead law (St.1851, c. 340) was enacted. The Court stated:

> When the word "debt" was used at that time it hardly is conceivable that its signification could have been thought to be broad enough to include unliquidated damages like those claimed in the case at bar. Common law forms of action existed at that time, and the action of debt as distinguished from other actions sounding in contract had not been abolished.

*Id.* at p. 119, 103 N.E. 469. Later the court added:

> The word "debt" has never been made to include the simple possibility of being found responsible in damages for the breach of an executory contract where neither the fact of liability nor the amount can be held affirmatively to exist until a judgment shall have been recovered. The broad definition of "debt" given by Story, J. in *Carver v. Braintree Manuf. Co.*, 2 Story, 432, [5 F.Cas., no.

2485] was rejected by this court in *Child v. Boston & Fairhaven Iron Works*, 137 Mass. 516. ... Ordinarily ["debt"] does not include "something to which the party may be entitled as damages in consequence of a failure to perform a duty or keep an engagement." Cooley, J., in *Lockhart v. Van Alstyne*, 31 Mich. 76, at 78.

*Id.* at p. 122, 103 N.E. 469.

*Kilbourne* did not specifically address whether a tort claim not reduced to judgment could be a debt, but the reasoning and historical analysis set forth in *Kilbourne* make clear that tort claims do not fall within generally accepted definitions of debt. Tort claims are by their nature claims for unliquidated damages, claims wherein "neither the fact of liability nor the amount can be held affirmatively to exist until a judgment shall have been recovered." *Id.* at p. 119, 103 N.E. 469. *Kilbourne* expressly states that "the word 'debt' has never been used to include the simple possibility of being found responsible in damages" upon such claims. *Id.* at p. 119, 103 N.E. 469. *Kilbourne* also states that debt "ordinarily ... does not include 'something to which the party may be entitled as damages in consequence of a failure to perform a duty,' " *id.* at p. 122, 103 N.E. 469, including (presumably) damages for breach of a duty of due care, which is the basis of Pierson's claim for negligence against Gerald Miller and of any claim for negligence. Therefore, *Kilbourne* leads to the conclusion that a cause of action in tort is not a debt as that term was used in Massachusetts law circa 1851. See *In re Rare Coins Galleries of America, Inc.*, 862 F.2d 896, 904 (1st Cir.1988) (Under the holding of *Kilbourne*, "debt", as used in the reach and apply statute, does not include tort claims.).

The popular meaning of debt is broader than its legal meaning. The Supreme Judicial Court has several times noted that "the word 'debt' ... in its popular sense includes all that is due a [person] under any form of obligation or promise." *Gray v. Bennett*, 44 Mass. 522, 526 (1842); see also *Bowen v. Hoxie*, 137 Mass. 527, 531 (1884)

and *Savage v. Shaw*, 195 Mass. 571, 81 N.E. 303 (1907). Under this popular definition, an unliquidated tort claim could perhaps be deemed a debt; but the popular definition does not control. "Rather than using terms in their everyday sense, '[t]he law uses familiar legal expressions in their familiar legal sense.' " *Bradley v. United States*, 410 U.S. 605, 609, 93 S.Ct. 1151, 1154, 35 L.Ed.2d 528 (1973), quoting from *Henry v. United States*, 251 U.S. 393, 395, 40 S.Ct. 185, 186, 64 L.Ed. 322 (1920). If a word or phrase has a technical or specialized meaning, the Supreme Judicial Court will adopt that meaning in its construction of a statute. *Simon v. State Examiners of Electricians*, 395 Mass. 238, 479 N.E.2d 649 (1985); *School Committee of Springfield v. Board of Education*, 362 Mass. 417, 439, 287 N.E.2d 438 (1972).

Though it is difficult to extract from the decisions of the Supreme Judicial Court a general, all-purpose definition of debt or an all-inclusive list of the obligations that might be deemed debts,[6] it is clear from the cases discussed above that in its general legal sense, "debt" does not include, and historically has not included, tort claims not reduced to judgment. Nothing in the homestead law gives cause to believe that "debt" as used therein was meant to be construed more broadly.

■ This Court concludes—as did the Land Court in *Sullivan v. Begaso*—that the Supreme Judicial Court would construe the word "debt", as it is used in G.L. c. 188, § 1(2), as not including liability for personal injury torts until after judgment.

### 3. Declaration of Homestead as Fraudulent Conveyance

■ Pierson's final argument is that Miller made his declaration of homestead to place the property beyond the reach of an impending judgment creditor. Therefore, the declaration should be avoided under Massachusetts G.L. c. 109A, as a fraudulent transfer. I disagree. The Debtor's availing himself of an exemption that state law makes available to him is not a fraudulent transfer. The very purpose of the homestead law is to put the homestead beyond the reach of creditors (at least to the extent of $100,000.00 of the homestead's value). The Debtor can hardly be faulted for having done what the law permits him to do.

The Supreme Judicial Court said as much when it addressed this issue long ago:

---

6. The Supreme Judicial Court has addressed the meaning of debt in a number of different contexts. In addition to the cases cited elsewhere in this memorandum, see *Pelham v. Aldrich*, 8 Gray (74 Mass.) 515 (1858) (For purpose of fraudulent conveyance law, obligation to pay costs of litigation accrues only when judgment enters for costs.); *Dows v. Griswold*, 122 Mass. 440 (1877) (The possibility that a plaintiff may be charged with costs in an action pending at the time of his bankruptcy is not a provable debt or a debt in any sense until judgment is rendered.); *Lowell v. Street Commissioner of Boston*, 106 Mass. 540 (1871) (Landowner's claim for compensation for the taking of land, being uncertain in amount, is not a debt in the technical and legal sense; therefore, the amount due thereunder is not part of landowner's taxable estate.); *Gray v. Bennett*, 44 Mass. 522 (1842) (A right of action for usury is, under insolvency law, a debt that passes to debtor's assignee.); *Savage v. Shaw*, 195 Mass. 571, 81 N.E. 303 (1907) (Debtor, as used in statute holding officers of a corporation liable for certain of the corporation's debts, does not include judgment recovered in a tort action.); *Bowen v. Hoxie*, 137 Mass. 527, 531 (1884) (Debt, as used in a will, construed to include testator's posthumous obligation to unborn son whom testator inadvertently neglected to provide for in will.); *Mill Dam Foundry v. Hovey*, 21 Pick. (38 Mass.) 417, 455 (1839) (A claim for unliquidated damages under a contract is a debt within meaning of statute making members of a manufacturing corporation liable for corporation's debts.); *Woodbury v. Sperrel Print*, 187 Mass. 426, 428–429, 73 N.E. 547 (1905) (A claim under a lease for loss of rent is a debt within meaning of "reach and apply" statute.); *Lothrop v. Parker*, 202 Mass. 104, 107, 88 N.E. 666 (1909) ("Debt," as used in statute requiring executor to give bond to pay debts of testator, includes judgment against testator for fraud in the inducement.); *Gilman v. Taylor*, 266 Mass. 346, 349, 165 N.E. 494 (1929); *Union Market National Bank v. Gardiner*, 276 Mass. 490, 494–495, 177 N.E. 682 (1931); *Bethlehem Fabricators, Inc. v. H.D. Watts Co.*, 286 Mass. 556, 563, 190 N.E. 828 (1934) (Liquidated liability for labor and material furnished under contract was debt within a meaning of reach and apply statute.); *Garsson v. American Diesel Engine Corp.*, 310 Mass. 618, 622–623, 39 N.E.2d 566 (1942).

If a debtor, knowing that he is unable to pay his debts, purchases property exempt from levy on execution, he exercises a privilege which the law gives him, and wrongs no one. If he buys provisions for his family, or a cow, or necessary clothing, he merely puts his property in a shape which the humanity of the law recognizes. And there is nothing to distinguish the exemption of a homestead from the like exemption of personal property.

... The debtor, by securing a homestead for himself and family ... takes nothing from his creditors which the law has secured to them, or in which they have any vested right. He conceals no property. He merely puts his property into a shape in which it will be the subject of a beneficial provision for himself which the law recognizes and allows.

*Tucker v. Drake*, 93 Mass. (11 Allen) 145, 146–147 (1865). The force of this holding is blunted somewhat by the various exceptions in G.L. c. 188, § 1, especially the exception for debts that arose before the homestead estate was acquired. But as I ruled above, that exception does not apply in this case, so the Supreme Judicial Court's holding governs. Therefore, the declaration of homestead was not a fraudulent conveyance as to Pierson.

■ Neither is it fraudulent under the Bankruptcy Code as against the Trustee in Bankruptcy or the bankruptcy estate. A debtor's conversion of non-exempt assets into exempt assets on the eve of bankruptcy in order to shield the assets from creditors is not in itself fraudulent. *Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871, 873–874 (8th Cir.1988); *Ford v. Poston*, 773 F.2d 52, 54–55 (4th Cir.1985); *First Texas Savings Association, Inc. v. Reed*, 700 F.2d 986, 990–991 (5th Cir.1983); *In re Oliver*, 38 B.R. 407, 409 fn. 4 (Bankr. D.Mass.1984); and *In re White*, 28 B.R. 240, 242–243 (Bankr.E.D.Va.1983). These cases note that such a conversion can be fraudulent if the movant can show "extrinsic evidence" of fraud, but the movant has neither alleged nor introduced such evidence. By recording the declaration of homestead, Gerald Miller did nothing more

than claim an exemption that the law made available for his and his family's protection. In sum, I find no reason to avoid the declaration of homestead as fraudulent.

*Conclusion*

Therefore, I conclude that the Debtors are entitled to the full value of Gerald Miller's homestead exemption under Massachusetts law. Accordingly, I overrule Marion Pierson's objection to their having claimed that exemption.