THOMAS M. REYNOLDS *vs.* MISSOURI, KANSAS AND TEXAS
RAILWAY COMPANY & trustee.

Suffolk.    January 16, 1919. — May 19, 1919.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & CARROLL, JJ.

*Trustee Process.    Contract,* Construction.

A contract in writing between a railroad corporation and an express company
provided for a payment by the express company to the railroad company for
business done for it on the basis of a certain percentage of the gross revenue
received, payments to be made monthly with an annual adjustment.    An
article of the contract provided that the agreement was "subject to all existing
and future Federal and State laws."    A trustee process, in an action in which
the railroad company was defendant, was served upon the express company in
1915 at a time when it was accountable to the railroad company for monthly
payments under the contract for the preceding four months.    It appeared that
in the years 1909 to 1911, the express company had made payments to the rail-
road company on the basis of rates which were called in question by the State
of Oklahoma under a State statute and later were adjudged in that State to
have been in violation of the statute as being too large, and a refunding there-
fore was ordered in Oklahoma.    *Held,* that in the determination of the amount
for which the trustee should be charged, it was entitled to be credited with the
amount due to it from the defendant under the ruling of the State court of
Oklahoma.

BILL IN EQUITY, filed in the Superior Court on August 31, 1915,
and afterwards amended into an action at law as stated in the
opinion.

In accordance with the decision reported in 228 Mass. 584,
judgment was entered against the defendant.    Proceedings
against the trustee, the American Express Company, are described
in the opinion.    That trustee admitted that it should be charged
in the sum of $10,997.55.

Article X of the agreement between the railroad company and
the American Express Company, mentioned in the opinion, was
as follows:

"The Express Company, for and in consideration of the ac-
commodations, services, rights and privileges herein specified,
hereby agrees to pay to the Railway Company fifty-five per cent

(55%) * of the gross revenue derived by the Express Company on all business transacted by it upon the lines embraced in this agreement, and the Express Company guarantees that the amount so paid to the Railway Company will, during each year of the term of this agreement, which is understood, so far as guarantee is concerned to begin with February 1st, 1913, at least equal the sum of three hundred seventy-two thousand dollars ($372,000.00) and a proportionate sum for the fraction of any year should any such fraction of year obtain during the continuance of this agreement.

"The payments hereinbefore provided for shall be made as follows:

"The Express Company shall pay monthly, on or before the tenth day of each month, to the Treasurer of the Railway Company, as advance compensation for the accommodations, services, rights and privileges provided hereunder during the preceding month, the sum of thirty-one thousand dollars ($31,000.00).

"The Express Company will render as soon as reasonably practicable, but not later than one hundred and twenty (120) days after the end of each month, a certified statement showing the gross revenue derived by it upon business transacted by it during such month, upon the lines embraced in this agreement, and if fifty-five per cent (55%) of the gross revenue shown by said statement shall exceed the sum already paid to the Railway Company as an advance payment for the said month, the Express Company will forthwith pay to the treasurer of the Railway Company the amount of such excess. If, when all the said monthly statements for the twelve months' period ending January 31st, 1914, shall have been rendered by the Express Company to the Railway Company, it shall appear that the sums paid by the Express Company to the Railway Company for such twelve months' period exceed fifty-five per cent (55%) of the gross revenue derived by the Express Company as aforesaid, then the Railway Company will repay to the Express Company the amount of such excess, unless such repayment would reduce the total amount paid hereunder to the Railway Company by the

---

* For the year 1915, fifty-two and one half per cent was substituted for fifty-five in all places in this article.

Express Company for the said twelve months' period below the guaranteed sum of three hundred seventy-two thousand dollars ($372,000.00), and in such event the Railway Company will repay to the Express Company only the amount received by the Railway Company hereunder for such twelve months' period in excess of the said sum of three hundred seventy-two thousand dollars ($372,000.00). A similar adjustment shall be made between the parties hereto, as soon as all the monthly statements shall have been rendered by the Express Company to the Railway Company for each succeeding twelve months' period during the term of this agreement; and also as soon after the termination of this agreement as the Express Company shall have rendered to the Railway Company monthly statements for the period elapsing since the end of the twelve months' period for which the last adjustment was made, a final adjustment between the parties hereto shall similarly be had.

"In the compilation of such monthly statements, the gross revenue from express matter carried by the Express Company only upon the lines of railroad covered by this agreement shall be deemed to be the whole amount received by the Express Company from such matter, but shall not include charges due or paid to other companies or persons, or for express or transportation service on other lines not covered by this agreement; and, further, that in all cases where express matter shall have been carried by the Express Company partly upon the lines of railroad covered by this agreement and partly upon other lines, the gross revenue to be accounted for by the Express Company, as provided for herein, shall be divided between the lines covered by this agreement and other railroad or transportation lines over which the Express Company operates, on a rate prorate of the merchandise rates of the Express Company between the points of origin or destination on lines of railroad over which the Express Company operates, other than those covered by this agreement, and similar rates from or to said junction points to destination or originating points on the lines covered by this agreement." [Here followed an illustrative example.]

Article XIV of that agreement, also mentioned in the opinion, was as follows:

"This agreement is subject to all existing and future Federal

and State laws and to all rules and orders by any board, commission or body having competent authority to regulate either of the parties hereto, or the traffic covered by this contract. In case it shall be found to conflict with any such law, rule or order, valid as against it, it shall be modified to conform thereto. In case of the substantial impairment of the benefits to either party herein contemplated, to such an extent that a readjustment of terms shall not be mutually satisfactory, either party shall have the right to terminate this contract upon a reasonable notice of not less than ninety (90) days to the other."

On motion of the plaintiff, *Chase*, J., ordered the trustee charged in the sum of $50,754.09. The trustee appealed.

*A. M. Pinkham,* for the American Express Company, trustee.

*W. E. Tucker,* (*H. Clark* with him,) for the plaintiff.

BRALEY, J. The plaintiff originally brought a bill in equity in a writ of summons and attachment by trustee process as provided in R. L. c. 159, § 8, service of which as well as of a subpoena subsequently issued was made upon the trustee directing it to appear and answer the bill "and to show cause why an injunction should not issue." But, an interlocutory decree having been entered dismissing the bill in so far as the trustee was a defendant, the plaintiff under R. L. c. 159, § 6, was allowed to amend the suit into an action at law with leave to file a declaration. The pleadings having been completed, a trial followed in which the plaintiff recovered judgment against the railway company, hereafter called the company, and the only question remaining is the amount for which the trustee should be charged. *Reynolds* v. *Missouri, Kansas & Texas Railway,* 228 Mass. 584.

The date of service on the trustee was August 31, 1915, and in the amended answer, filed and allowed in substitution of the original answer, the trustee admits that it is chargeable for a balance due the defendant of $10,997.55; but, the trial court having fixed the amount at $50,754.09, the case is before us on the trustee's appeal.

The trustee on the record undoubtedly was a debtor of the company on August 31, 1915, and its indebtedness then due and payable is to be ascertained as of that date. *Koontz* v. *Baltimore & Ohio Railroad,* 220 Mass. 285. R. L. c. 189, § 12. By § 25 it is given the right to deduct all demands against the company

which, if it had not been summoned as trustee, would have been available by way of set-off in an action by the company. The scope and effect of this section enables the trustee to retain or set off in any lawful mode of adjustment between himself and his principal without regard to technical forms any or all moneys or demands except claims for unliquidated damages for wrongs or injuries. "It is the balance only, after all just and equitable allowances, for which he is to be charged." The plaintiff's rights are no greater than those of the original creditor, and if the company could not have recovered more than the amount admitted, the trustee is not chargeable for anything more. *Nutter* v. *Framingham & Lowell Railroad*, 132 Mass. 427, and cases cited. *Hopedale Manuf. Co.* v. *Clinton Cotton Mills*, 224 Mass. 193, 197.

The statements in the answer, as well as the answers to the interrogatories being under oath, are to be considered as true, and whatever indebtedness the trustee had incurred arose from its contracts with the company which in all essential particulars were similar to the copy of the contract annexed to the interrogatories. The agreement provides in substance for payment to the company for transacting the business of the trustee of a percentage based on the gross revenue received, and at the time of service it was accountable to the company for the months of May to and including August, 1915. The excess revenue during this period with the guaranty for the month of August amounted to $62,112.84, and if $11,358.75, coming to the trustee for "baggagemen-messenger service," and incidental expenses concerning which there is no dispute, is deducted, the sum of $50,754.09 remains for which the plaintiff contends the trustee should be charged.

But the trustee claims that a further deduction of $39,756.54 should be allowed for over-payments on account of business transacted during the years 1909–1914. *Richards* v. *Stephenson*, 99 Mass. 311. While these payments had been made, the amount actually due depended upon the outcome of litigation involving its express charges or rates then pending in the State of Oklahoma, which had not been determined at the date of service, or of filing the original answer. The proceedings however having terminated, the amended answer recites in detail the various phases of the litigation which resulted in the trustee being compelled to refund

certain charges levied and collected in excess of the rates established by the local law. Of this sum, $77,565.20 had been collected for business done over the lines of the company, and the over-payment under the old rates amounted to $39,756.54. And as shown by the answers to interrogatories fifty and fifty-one that amount was accepted by the company "without protest or reserve" as the basis of the final settlement. If the trustee is entitled to this credit it is chargeable only for $10,997.55.

The plaintiff's principal contentions, although variously phrased, are, that the contract absolutely required the trustee to make the payments now claimed to have been in excess, or, if there were over-payments, yet, the payments having been voluntarily made, the trustee, if it had sued the company, could not have recovered, and the alleged right of set-off cannot be maintained.

It is true that by the contract the percentage of "fifty-five" per cent, subsequently reduced to fifty-two and one half per cent, rests on the gross revenue received by the trustee on all business it transacts upon the lines embraced in the agreement. But the answer, which is not materially modified by the answers to the interrogatories, states, that these payments were made' during the pendency of the litigation on the basis of the rates it had fixed for the transaction of business in Oklahoma, and before it had been required under the order of the corporation commission, and the judgment thereon, to refund the excess charges. It was not contemplated that either the trustee or the company should derive a profit from violations of law. By article XIV the "agreement is subject to all existing and future Federal and State laws, and to all rules and orders by any board, commission or body having competent authority to regulate either of the parties hereto, or the traffic covered by this contract." And the company as well as the trustee was bound by the change in rates in any future accounting. It is plain that during the period in question the "gross revenue" called for by the contract is not the amount received on the old rates, but the amount stipulated in accordance with the rates ordered by the commission.

The contract also expressly provides in article X, that if the sum paid by the trustee shall exceed "fifty-five per cent" of the gross monthly revenue, then the company will repay the amount of such excess, unless such payment would reduce the total amount

for the period of twelve months below "the guaranteed sum of three hundred seventy-two thousand dollars," and in such event payment is limited to any excess above that amount. The trustee doubtless acted with full knowledge of the fact that if it was defeated in the litigation over rates the payments exceeded its liability. But the wording of article X, especially when read with article XIV, does away with any implication that the trustee intended to waive its rights to an adjustment at the end of the yearly period, when the monthly statements and payments for that year were to be reviewed, revised and restated. The trustee manifestly did not intend, nor was it required to relinquish, its right to a full accounting at the close of the year, when all errors, which would include monthly over-payments, were to be corrected, and the balance due from either party to the other was to be ascertained and adjusted.

The amended answer having stated that, "At the time of the service of the plaintiff's writ the express company had paid the railway company all amounts due for the months previous to May 1915, and its proportional part of the guaranteed amount for all months previous to August 1915, but had paid no part of the guaranteed amount for the month of August 1915," the plaintiff's further contention, that the trustee has failed to show that it is entitled to any adjustment because no payment had been made in excess of the amount guaranteed, need not be further considered. The trustee, if at the date of the attachment it had been sued by the company in our courts, accordingly could have maintained its set-off. *Sheldon* v. *Kendall*, 7 Cush. 217. *Commonwealth* v. *Pheonix Bank*, 11 Met. 129, 136. *Green* v. *Nelson*, 12 Met. 567, 573. *Lawrence* v. *Carter*, 16 Pick. 12, 16. R. L. c. 174, § 1.

It follows that none of the plaintiff's contentions in support of the larger amount can be sustained, and the trustee should be charged in the sum of $10,997.55.

*So ordered.*