(No. 18341.—Order affirmed.)
W. B. MAULDING *et al.* Appellants, *vs.* J. W. WILLIAMS
*et al.* Appellees.

*Opinion filed June 23, 1928.*

1. WORDS AND PHRASES—*meaning of the words "debt" and "in-debtedness."* A debt is that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another or to perform for his benefit; a thing owned; an obligation or a liability; and "indebtedness" is the condition of being indebted.

2. DRAINAGE—*when district cannot be dissolved because of existing obligation to repair bridges.* Under sections 40, 40½ and 41 of the Farm Drainage act a special drainage district organized under the act is required to construct, maintain and repair all necessary bridges upon and along public highways crossed by ditches of the district, and where such bridges have become so out of repair as to be unsafe for public travel the duty to repair is one which may be enforced by *mandamus* and is an obligation which precludes dissolution of the district within the meaning of section 1 of the act of July 1, 1899.

APPEAL from the County Court of Hamilton county; the Hon. DAVID J. UNDERWOOD, Judge, presiding.

T. H. CREIGHTON, and HARRY ANDERSON, for appellants.

W. W. DAILY, State's Attorney, HOGAN & HOGAN, and CONGER & ELLIOTT, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from the order of the county court of Hamilton county dismissing appellants' petition to dissolve Auxier Creek Special Drainage District.

The cause was tried on a stipulation of facts. The Auxier Creek Special Drainage District was organized under the Farm Drainage act in 1911. It constructed the necessary ditches throughout the district, secured right of way either

by purchase or condemnation, and excavated ditches not in line of a natural water-course but across enclosed fields and across highways. The commissioners for the district constructed bridges across the ditches in the highways and in the fields traversed by such ditches, as required by law, and reconstructed or repaired the same as necessity arose, until the spring of 1926. Some time prior to filing the petition for dissolution three of the bridges along the public highway had either washed out or had become so out of repair as to be unsafe for travel. The highway officials demanded that the district re-build the bridges, and the drainage commissioners met with the commissioner of highways in each case and promised to re-build the bridges washed out. In the case of two of the land owners whose lands were crossed by the ditches and for whom the commissioners had constructed bridges, one of the bridges was washed out and the other had become so unsafe that it could not be used. The property owners made demand upon the drainage commissioners for the re-building of these bridges and the commissioners promised to do so. Instead of so doing, however, the commissioners, as part of four-fifths of the land owners of the district, representing more than three-fourths of the land, filed the petition for a dissolution of the drainage district involved here. In addition to the above it was stipulated that there was no indebtedness of the drainage district existing at the time the petition to dissolve was filed, unless the agreement and liability of the commissioners to re-build the bridges that were washed out could be considered an indebtedness.

Section 1 of an act to provide for the dissolution of drainage districts, in force July 1, 1899, (Cahill's Stat. 1927, p. 1036,) provides that a drainage district may under that act be dissolved by an order of the county court of the county in which the same is organized, upon a hearing on a verified petition of not less than four-fifths of the adult land owners who own not less than three-fourths of the

lands of the district, where the court shall find "that no indebtedness of such district exists and the costs of dissolution have been advanced: *Provided,* the waterways and other improvements of dissolved districts shall be and remain for the common use of and improvements by the land owners of said district so dissolved."

Appellants contend that the indebtedness referred to in the statute must be construed to mean a debt of money due or owing, and that it is necessary that the debt be a fixed and specified quantity. Appellees, on the other hand, contend that the word "debt" or "indebtedness" denotes that which is due from one to another, whether in money, goods or service, and that since the commissioners were required, and could be compelled at the time of the filing of the petition for dissolution, to replace or repair the bridges described in the stipulation, which things they agreed to do, there was a valid subsisting indebtedness against the district and it could not be dissolved; and that if it be held that the district could be dissolved despite these facts, the statute authorizing such dissolution is invalid as imposing upon the towns the expense of re-building the bridges in the highways.

The stipulation filed in the cause sets out that the petition for dissolution was signed by more than four-fifths of the land owners owning more than three-fourths of the lands in the district and that the costs of dissolution proceedings had been advanced by the petitioners; that the district was organized under the Farm Drainage act as a special drainage district; that it acquired the right of way for the ditches of the district either by release or by condemnation; that the main ditch of the district crosses a public highway extending north and south at a point where that highway intersects the county line between Wayne and Hamilton counties; that the ditch at that point was artificial and not in a natural water-course; that after the construction of that ditch the drainage district constructed a

bridge in the highway over the drainage ditch, which bridge is under the joint jurisdiction of the counties of Wayne and Hamilton; that thereafter, as occasion demanded, the drainage district repaired the bridge; that the ditch washed out and widened from a width of twenty feet to a width of sixty-five feet, and the bridge through natural decay became in such a bad state of repair that in the spring of 1926 it was dangerous to public travel, and the commissioners of the district posted notices on each end of it, signed by a majority of the commissioners, notifying the traveling public that the bridge was condemned and not safe to be used for traffic; that the bridge from that time to the time of the hearing remained in a dangerous state of repair and is now unsafe for use by the traveling public and does not comply with the requirements of the highway department as to the character of bridge to be erected and maintained in a public highway; that on the 9th day of September, 1926, the drainage commissioners met with the superintendent of highways of Wayne county and asked him to prepare plans and specifications for another bridge, and that the superintendent of highways did make plans and specifications and presented them to the drainage commissioners at the expense of the district, and that a short time thereafter the petition involved in this case was presented to the court; that this ditch crosses a public highway running north and south, known as the Wiley Hand road, in Four Mile township, in Wayne county; that the drainage district constructed a pole bridge over the ditch in the highway for the use of the traveling public and when the same became in a bad state of repair replaced it with another wooden bridge, and so continued to repair it from time to time; that at the time of the filing of the petition it was in a bad state of repair and very dangerous to the traveling public; that the swinging-cap had come out and the bridge was supported only by two one-inch rods; that on the 9th of September, 1926, the commissioners of the drainage district

met with the commissioner of highways of that town at the
site of the bridge and there promised to replace the same
and asked the county superintendent of highways of Wayne
county to make plans and specifications therefor, which he
did and presented them to the drainage commissioners, and
they promised to construct such a bridge in accordance with
the plans; that the bridge at this point is about ninety-five
feet long at the present time; that this ditch also crosses
another north and south road known as the Township Line
road, which is one of the boundaries of Crouch township, in
Hamilton county; that the commissioners built in the high-
way a bridge about forty feet long over the ditch, and
twice since that time the bridge has become in bad and dan-
gerous state of repair and they have replaced the same with
other wooden bridges; that at the time of the hearing this
bridge was unsafe for public travel and did not comply with
the requirements of the State highway department; that
in the same township a lateral ditch known as the Shelton
Creek Lateral crosses the same road, and the drainage dis-
trict erected a wooden bridge at that time in the highway
and has replaced it as occasion demanded; that the bridge
at the present time, while passable for ordinary traffic, will
not support township machinery which the commissioner
desires to move over the highway; that two bridges on the
lands of land owners within the district were at the time
of the filing of the petition in a bad state of repair, one be-
ing washed out, and that these were bridges which had been
built by the drainage commissioners and repaired from time
to time and they promised they would put in new bridges.

"Debt," as defined by Webster's International Diction-
ary and by the Century Dictionary, is "that which is due
from one person to another, whether money, goods or ser-
vices; that which one person is bound to pay to another or
to perform for his benefit; a thing owed; an obligation;
a liability." "Indebtedness" is the state of being indebted.
This definition has also been recognized by courts of this

country.  *New Jersey Ins. Co.* v. *Meeker,* 37 N. J. L. 282; *Daniels* v. *Palmer,* 41 Minn. 116; *Gray* v. *Bennett,* 44 Mass. 526; *In re Brouillard,* 20 R. I. 617, 40 Atl. 762; *State* v. *Georgia Co.* 112 N. C. 34, 17 S. E. 10.

Section 40 of the Farm Drainage act (Cahill's Stat. 1927, p. 1018,) provides that the commissioners of drainage districts shall have the right to use any part of the right of way of any public highway for the purpose of the work to be done, provided such use will not permanently destroy or materially impair such public highway for public use. Section 40½ provides: "The [drainage] commissioners have power and are required to make all necessary bridges and culverts along or across any public highway  *  *  * which may be deemed necessary for the use or protection of the work."   Section 41 of that act provides that "after the completion of the work the commissioners shall thereafter keep the same in repair."   Section 40 also provides that the public highway may be assessed for benefits by the drainage commissioners.   Section 40½ originally provided that the cost of construction of bridges and culverts on highways should be paid out of the road and bridge fund of the town.  This provision was held unconstitutional in *Morgan* v. *Schusselle,* 228 Ill. 106.  There is still in effect, however, the provision of section 40½ which requires the commissioners to construct all necessary bridges and culverts along and upon the highway.  The sections were construed in *Highway Comrs.* v. *Drainage Comrs.* 246 Ill. 388, and it was held that under them the drainage commissioners are required to build and keep in repair the bridges over ditches where the same cross public highways.  It is there pointed out that by the provision of section 40 the public highway may be assessed for benefits, a method is provided whereby the drainage commissioners of a district organized under that act may obtain a contribution from the town for repairing or building such bridges.  It cannot be doubted, therefore, under the facts of this case as shown by the stip-

ulation, that the duty to immediately repair or re-build the bridges in question rested directly upon the commissioners at the time the petition for dissolution was filed. Under such facts *mandamus* would lie against the commissioners to proceed at once to discharge this obligation.

Appellants contend that if the district may not be dissolved because there is a duty resting on the commissioners to repair the bridges of the district, then such district may never be dissolved for the reason that such duty is a continuing one. The situation here, as shown by the stipulation of facts, clearly presents a demand for immediate action on the part of the commissioners. This is not a case of attempted dissolution of a district which has all its bridges in a good state of repair, with no immediate demand for action to re-build or repair resting upon the commissioners. Here the commissioners can, under the condition of this record, be compelled to proceed at once to build the necessary bridges in the district. An immediate pressing obligation to do so rests upon them. A "debt" or "indebtedness" as herein defined now rests upon this district which it is bound to discharge for the benefit of the public and the land owners. It would be contrary to the intent of the statute to say that notwithstanding the existence of such a demand for action on the part of the district it could avoid that obligation by securing an order of dissolution.

We are of the opinion that the obligation to take immediate action to repair and re-build these bridges constitutes an indebtedness for service due within the intent of the statute and which must be discharged before the district can be dissolved. This being true, the county court did not err in dismissing the petition to dissolve the district. As the order of the county court is affirmed on this ground it does not become necessary to discuss the constitutional questions involved.

The order of the county court is affirmed.

*Order affirmed.*