HOPEDALE MANUFACTURING COMPANY *vs.* CLINTON COTTON MILLS & others.

Suffolk. March 8, 9, 1916, — May 19, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Equity Jurisdiction,* To reach and apply equitable assets. *Words,* "Any property . . . or interest."

A suit in equity cannot be maintained against a foreign corporation having no usual place of business in this Commonwealth and a firm with which the corporation had a contract of agency for the sale of its goods to reach and apply toward the payment of a debt of the corporation to the plaintiff property of the corporation alleged to be in the possession of the firm and not to be subject to process in an action at law, where it appears that at the time of service of process upon the firm they did not have possession of any property of the corporation or owe it anything, although, under their contract with the cor-

poration, if the corporation fulfilled certain unperformed contracts for goods · which the firm had placed with it on behalf of their customers, the firm might at some future time owe money to the corporation.

The "property, right, title or interest, legal or equitable, of a debtor" which can be reached and applied by a suit in equity under R. L. c. 159, § 3. cl. 7, are those in existence when the suit is brought.

BILL IN EQUITY, inserted in a writ of trustee process dated June 25, 1915, seeking to have the defendant Clinton Cotton Mills adjudged indebted to the plaintiff in the sum of $8,096 and interest and to reach and apply in satisfaction of that debt "any money or moneys due or that may hereafter become due from" the defendants Harding and Tilton to the Clinton Cotton Mills "under any contract or contracts now existing" between them.

The case was heard by *McLaughlin*, J., on an application for a preliminary injunction against Harding and Tilton, on the bill without an answer, and there were in evidence, besides the contract between Harding and Tilton and the Clinton Cotton Mills, a statement, signed by the plaintiff and the attorney for Harding and Tilton, of what Harding, who was absent, would testify if he were present.

One clause of the contract between Harding and Tilton and the Clinton Cotton Mills was as follows:

Article III, clause 2. "The Agents shall make general advances to the Mill from time to time as required up to the aggregate maximum amount of Two Hundred and Twenty-five Thousand Dollars ($225,000), but not more. They shall also make advances up to the full market value against unsold merchandise consigned to them up to an amount of Twenty-five Thousand Dollars ($25,000), but not more. The Agents shall accept consignments of manufactured products against sales and make payments therefor or advances thereon up to the full market value of such consignments, less commissions, expenses and New York freight allowance. The $225,000 general advances and also any advances up to $25,000 against unsold merchandise shall be covered by six months' notes of the Mill bearing interest at the rate of six per cent (6%) per annum and renewable at the request of the Agents. These notes shall be endorsed by Mercer S. Bailey and William J. Bailey and may be retained by the Agents or used by them in their own loans."

Other provisions of the contract are described in the opinion.

From the statement of Harding it appeared that the entire advance of $225,000 had been made by his firm to the corporation, for which they held the corporation's unmatured notes; that the corporation also owed the firm $7,528.03 for advances by the firm beyond the amounts of sales made by the firm of the corporation's goods, which included sales of goods on ten days' credit for which the firm had not been paid by the customers.

It further appeared from the statement that there also were amounts, probably double in amount the sum claimed by the plaintiff, covered by contracts already entered into by the firm with their customers for delivery of Clinton Cotton Mills products to be manufactured in the future. Such amounts were not payable to the firm in any event until after delivery of the products had been made; but by the terms of the firm's contract they were bound to make deliveries as called for in the contracts, and orders to that effect in every instance had been given by the firm to the Clinton Cotton Mills. As deliveries under such contracts were made the firm would be in position to apply such amounts, less commissions, freight allowances and other charges, to the credit of the Clinton Cotton Mills.

The judge, after finding the facts above described, ruled that under the contract between the Clinton Cotton Mills and Harding and Tilton, the right of the corporation, in accordance with the terms and conditions therein contained, to receive the proceeds of sales of its products under those contracts of sale already made by Harding and Tilton when the notice was served, was not property or any right, title or interest of the Clinton Cotton Mills which could be reached to be attached or taken on execution in an action at law, but was property, right, title and interest of the Clinton Cotton Mills which could be reached and applied under the provisions of R. L. c. 159, § 3, cl. 7; and accordingly an interlocutory decree for a temporary injunction was issued. Harding and Tilton appealed.

Thereafter Harding and Tilton filed a demurrer and a plea and the Clinton Cotton Mills filed a special appearance and a motion to dismiss the suit, and the plaintiff filed a motion to strike from the record the special appearance and the motion to dismiss.

The suit was further heard upon the demurrer, plea and motions by *McLaughlin,* J., and by his order an interlocutory decree

was issued overruling the demurrer and plea and denying both motions; and, being of the opinion that the two interlocutory decrees above referred to so affected the merits of the controversy that the matter ought to be determined by this court before further proceedings, the judge reported the case, "the decrees to be affirmed or such further or different order or orders or decree or decrees to be entered as justice and equity may require."

*R. Spring,* for the plaintiff.

*A. A. Ballantine,* for the defendant Clinton Cotton Mills.

*E. H. Abbot, Jr.,* for the defendants Harding and Tilton.

BRALEY, J.   The plaintiff, instead of commencing suit by bill with a writ of subpoena according to the usual course of proceedings in equity, inserted the bill in an original writ of summons and attachment by trustee process as permitted by R. L. c. 159, § 8. While the trustees, the individual defendants, are described as within this jurisdiction, the defendant, the Clinton Cotton Mills, a foreign corporation, is described as having its usual place of business without this Commonwealth, and, no personal service having been made, the court is without jurisdiction unless the individual defendants who have been duly summoned and are subject to our process had in their possession or control at the date of service, goods, effects or credits of the mills which can be reached and applied under R. L. c. 159, § 3, cl. 7, in satisfaction of the demands alleged in the bill. *Koontz* v. *Baltimore & Ohio Railroad,* 220 Mass. 285, 287, and cases cited. *Travelers Ins. Co.* v. *Maguire,* 218 Mass. 360, 362.   It is the plaintiff's contention that upon the record they are chargeable, and that consequently upon establishment of its claim a valid judgment can be entered against the property held by garnishment after notice to the mills in accordance with R. L. c. 170, §§ 1, 6, which has been given. *Lowrie* v. *Castle,* 198 Mass. 82. *Snyder* v. *Smith,* 185 Mass. 58, 62.   This question must be decided on the stipulation and the evidence recited in the record, which, having been introduced by agreement of parties, is to be taken as true.

The individual defendants are resident agents engaged to sell the products of the Clinton Cotton Mills upon commission under a contract terminable on six months notice by either party to the other party, which among other terms provides, that the agents should make general cash advances to the mills from time to time

for an aggregate maximum amount, and also should advance to the full market value against unsold merchandise consigned to them for a further stipulated amount.   To cover the advances, the mills engaged to give its interest bearing promissory notes on six months' time, indorsed by certain parties named in the contract, which were to be used by the agents in their own loans.   To secure the notes, advances, balances and commissions the mills gave a lien to the agents "on all its manufactured cloth products" whether in its possession or in transit or in possession of the agents, and on all "receivables," representing the proceeds of sales of cloth products, with authority upon default under any of the terms of the contract forthwith to sell for their own account in satisfaction of this lien at full market price and in such manner as they may determine any of such merchandise, and to sue for and collect for their own account any and all outstanding "receivables" for such merchandise, and to apply the proceeds of sale or collection toward the settlement of all outstanding obligations between the parties.

It is apparent that, because of advances under the contract, and of outstanding contracts entered into with their customers for delivery of the products of the mills to be manufactured in the future, there were no credits due from the agents to the mills either in money or merchandise at the date of service.

If, however, the agents could not be charged either in trustee process under R. L. c. 189, *Koontz* v. *Baltimore & Ohio Railroad,* 220 Mass. 285, 288, or under R. L. c. 159, § 3, cl. 7, as having "any property, right, title or interest, legal or equitable" of the mills in their possession or control, the plaintiff, relying on *Lord* v. *Harte,* 118 Mass. 271, presses the argument that, the contract not having been terminated, moneys which might become due and payable in the future upon an accounting can be reached and applied.   But while the statute uses the words "any property, right, title or interest, legal or equitable, of a debtor" the "property, right, title or interest" must be in existence when the proceedings to reach and apply are instituted.   *Silloway* v. *Columbia Ins. Co.* 8 Gray, 199, 203.   *Geer* v. *Horton,* 159 Mass. 259, 261.   *Snyder* v. *Smith,* 185 Mass. 58.   *Hoshor-Platt Co.* v. *Miller,* 190 Mass. 285. The obligations between the agents and their principal are not only mutual but purely executory, and a court of equity will not compel performance of an executory contract for the benefit of a

creditor of one of the parties. As said by Mr. Justice Field in *Pettibone* v. *Toledo, Cincinnati, & St. Louis Railroad,* 148 Mass. 411, 419, when speaking for the court, of property which may be reached and applied by a bill in equity before judgment, "No case . . . appears in our reports where under this process a plaintiff has been permitted to compel a debtor to execute on his part an executory contract made with other persons, or has been permitted to execute it for him in order that the plaintiff may compel these other persons to perform their part of the contract for the benefit of the plaintiff; neither has any claim for unliquidated damages for the breach of an executory contract been reached and applied under this procedure." This rule has been recognized and followed in *Wheelock* v. *Globe Construction Co.* 195 Mass. 456. *Eastern Electric Cable Co.* v. *Great Western Manuf. Co.* 164 Mass. 274, 276, *Geer* v. *Horton,* 159 Mass. 259, 261. The royalties payable to the debtor under the contract with the publishers in *Lord* v. *Harte,* 118 Mass. 271, depended solely upon the sale of his works, and royalties due or to become due resulted in a debt for definite sums of money which the debtor could be decreed to assign or transfer to the creditor. *Silloway* v. *Columbia Ins. Co.* 8 Gray, 199. But in the present case independently of the fact that the mills have not appeared generally and an assignment could not be ordered, it cannot be found that any moneys or merchandise will be due eventually from the agents to their principal when the contract has been terminated which they can be compelled to retain for the plaintiff's benefit.

It will be seen from what has been said that the bill cannot be maintained, and, whether the allegations are sufficient to show an enforceable debt, or whether the demurrer and plea of the individual defendants were overruled rightly need not be decided.

The interlocutory decree denying the motion of the mills to dismiss must be reversed, and a decree is to be entered granting the motion and dismissing the bill with costs. *Bennett* v. *Sweet,* 171 Mass. 600. *Hey* v. *Prime,* 197 Mass. 474. *Koontz* v. *Baltimore & Ohio Railroad,* 220 Mass. 285.

*Ordered accordingly.*