THE BETHLEHEM FABRICATORS, INC. *vs.* H. D. WATTS COMPANY & others.

Suffolk. May 18, 1932. — May 31, 1934.

Present: RUGG, C.J., CROSBY, WAIT, FIELD, & DONAHUE, JJ.

*Equity Jurisdiction,* To reach and apply equitable assets. *Jurisdiction. Assignment. Unlawful Interference. Equity Pleading and Practice,* "Supplemental bill," Amendment, Decree. *Words,* "Debt."

Where a Pennsylvania corporation, after having furnished materials and labor as required by a contract made with a Maryland corporation in connection with the construction of a building in Virginia, rendered to the Maryland corporation a final statement; a duly

authorized representative of the Maryland corporation thereafter agreed that the amount due from it to the Pennsylvania corporation was that set forth in the statement; and no part of such amount was paid, the liability of the Maryland corporation to the Pennsylvania corporation was liquidated and became a "debt . . . of a debtor . . . without the commonwealth" within the meaning of G. L. (Ter. Ed.) c. 214, § 3 (7).

Where a suit in equity by the Pennsylvania corporation under said § 3 (7), to reach and apply to the payment of such debt a certain cause of action which the Maryland corporation had against a Maine corporation with a usual place of business in this Commonwealth and an individual domiciled in Illinois, was fully tried in the Superior Court, and a decree granting the plaintiff relief was entered therein, it could not be said by this court on appeal that the trial judge should have declined jurisdiction of the suit because of the doctrine of *forum non conveniens.*

Discussion by FIELD, J., as to the assignability of causes of action in tort not reduced to judgment.

A cause of action by a building contractor for unlawful interference with a building contract between the contractor and a third person, resulting in the third person's breaking the contract, was an asset of the contractor which a creditor of his, in a suit in equity under said § 3 (7), could reach and apply to the payment of his indebtedness to the creditor, at least where the suit in equity was brought in the same court in which an action by the contractor for such unlawful interference was pending, so that the suit did not interfere with property in the control of another court.

Within the meaning of said § 3 (7), the value of such cause of action for unlawful interference as an asset of the contractor could "be ascertained [in the suit in equity] by sale, appraisal or by . . . means within the ordinary procedure of the court."

The bill in such suit in equity by the creditor joined as defendants the contractor and the person against whom his cause of action for unlawful interference ran, and contained appropriate allegations and prayers with respect to the existence of such cause of action and the pendency of an action by the contractor thereon. Appropriate interlocutory relief was granted to the plaintiff in the suit. Subsequently, the contractor secured judgment in his action and execution was issued. The plaintiff in the suit thereupon filed a "supplemental bill" containing allegations of such occurrences and additional prayers accordingly. *Held,* that

(1) The "supplemental bill," which was in the nature of an amendment to the original bill, properly brought before the court for its consideration changes in circumstances occurring after the filing of the original bill;

(2) The allegations in the "supplemental bill" supported the cause stated in the original bill;

(3) The judgment secured by the contractor in his action stood in place of his cause of action which the plaintiff, his creditor, sought to reach and apply by the original bill, and was itself an asset of the contractor which could be reached and applied under said § 3 (7);

(4) The change in the form of the contractor's asset did not deprive the plaintiff in the suit of his right to have it applied in payment of the contractor's indebtedness to him.

It appearing in the suit in equity above described that the contractor had actual notice of the filing of the "supplemental bill" and that he was represented by counsel appearing in subsequent proceedings for the protection of his interest in the property to which reference was made in the "supplemental bill," further notice to the contractor of the filing thereof and the issuance and service of process thereon were not necessary.

As a result of a certain interlocutory decree in the suit in equity above described, a sum of money, which was paid to the contractor's attorney on the judgment in the contractor's action and was retained by the attorney in compliance with the decree pending further order of the court, stood in place of said judgment and was available for application in payment of the contractor's indebtedness to the plaintiff when that indebtedness later was established at a hearing of the suit on the merits; and the terms of a final decree thereupon entered and ordering that such money be so applied were proper.

BILL IN EQUITY, filed in the Superior Court on February 18, 1928, described in the opinion.

The defendant H. D. Watts Company appealed from a decree entered by order of *Cox*, J., overruling its "motion to dismiss" and demurrer. A supplemental bill filed by the plaintiff, further proceedings, material findings by *Pinanski*, J., at the hearing of the suit, and a final decree entered by his order, are described in the opinion. Said defendant appealed from the final decree. The evidence at the hearing was reported.

*H. R. Bygrave*, for the defendant H. D. Watts Company.

*J. N. Welch*, (*A. Brayton* with him,) for the plaintiff.

FIELD, J. This is a suit in equity brought by a Pennsylvania corporation under G. L. (Ter. Ed.) c. 214, § 3 (7), to reach and apply the property of the defendant H. D. Watts Company, a Maryland corporation, hereinafter referred to as the principal defendant or the appellant, to the payment of a debt from said defendant to the plaintiff. The original bill, filed February 18, 1928, joined also as defendants, American Bond and Mortgage Company, a Maine corporation having a usual place of business in Boston, and William J. Moore of Chicago, Illinois. The sufficiency of service upon the principal defendant as a non-

resident defendant and of service upon the other defendants is not questioned. This bill alleged that the principal defendant owed the plaintiff "for goods sold and delivered" according to an account annexed which included, also, items for labor, and that said defendant had a certain asset which could not be reached and attached in an action at law, "namely, a certain cause of action against the defendants William J. Moore and American Bond and Mortgage Company for damages caused by unlawful interference with a certain contract of the H. D. Watts Company," and had caused suit to be brought against the other defendants in the Superior Court for the county of Suffolk "on said cause of action and said action is at present pending." An interlocutory decree was entered restraining the defendant American Bond and Mortgage Company "from paying any sum in payment, settlement or satisfaction of said cause of action." The principal defendant, appearing specially for the purpose of objecting to the jurisdiction of the court, filed a so called "motion to dismiss" and a demurrer on the grounds that the court had no jurisdiction to reach and apply "the verdict described in the bill," and no jurisdiction of the cause of action because all the parties to the bill "are foreign to this jurisdiction, and the debt alleged should be first adjudicated and reduced to judgment elsewhere." The judge treated this "motion to dismiss" as a demurrer and by an interlocutory decree overruled it, and also overruled the demurrer "without prejudice to the [principal] defendant to set up the same allegations of defence in its answer." From this interlocutory decree the principal defendant appealed.

After the entry of the interlocutory decree the principal defendant, on April 28, 1928, purporting to appear specially and not to waive its objections to the jurisdiction or its demurrer, or "motion to dismiss," filed an answer in which it did not plead to the allegation in the bill that it had a cause of action as alleged, but admitted that it had caused suit to be brought against the other defendants. The record does not disclose that the defendant Moore filed

an answer. On April 30, 1928, the defendant American Bond and Mortgage Company filed an answer objecting to the jurisdiction and denying that the principal defendant had or ever had a cause of action against it or the defendant Moore.

The plaintiff, on July 17, 1930, filed a so called "supplemental bill" amending the original bill by adding as parties defendant the United States Fidelity & Guaranty Company, a Maryland corporation, having a usual place of business in Boston, the sheriff of Suffolk County, the clerk of the Suffolk Superior Court, and H. Robert Bygrave; adding allegations that the cause of action of the principal defendant against the defendant American Bond and Mortgage Company set forth in the original bill had been reduced to judgment in favor of the principal defendant, that an execution on said judgment had been issued by the clerk of the Suffolk Superior Court, that there was outstanding a bond given by the defendant American Bond and Mortgage Company as principal and the United States Fidelity & Guaranty Company as surety for the purpose of dissolving an attachment obtained by the principal defendant "upon the property of the American Bond and Mortgage Company in connection with its suit on the cause of action set forth in the original bill of complaint," that H. Robert Bygrave, the attorney for the principal defendant, has in his possession the execution in favor of the principal defendant, and that it was the intention of the principal defendant to avoid the effects of the injunction previously issued by having the execution returned to the clerk of the Suffolk Superior Court unsatisfied and thereupon to bring suit on its judgment in another State, and adding prayers for additional relief.

The defendant United States Fidelity & Guaranty Company filed an answer to the original bill and to the "supplemental bill" in which it admitted the allegations in the "supplemental bill" as to the reduction to judgment in favor of the principal defendant of the cause of action of said defendant against the American Bond and Mortgage Company, the issuance of the execution thereon and the

existence of an outstanding bond for the purpose of dissolving the attachment. And there was evidence in support of the allegations so admitted.

An interlocutory decree was entered on July 25, 1930, dissolving injunctions previously issued, except as modified by the decree, enjoining the defendants American Bond and Mortgage Company and United States Fidelity & Guaranty Company from paying any sum of money to the principal defendant except to H. Robert Bygrave as its attorney, and ordering said H. Robert Bygrave after satisfying certain claims for fees and expenses due from the principal defendant to retain the sum of $30,000 until the further order of the court, out of any sum or sums paid to him by the defendants American Bond and Mortgage Company and United States Fidelity & Guaranty Company, or that might be collected by him "as the result of any levy upon any execution existing in favor of the H. D. Watts Company, against the American Bond and Mortgage Company, or against the United States Fidelity & Guaranty Company." Another interlocutory decree was entered dismissing the bill against the defendant William J. Moore.

The judge who heard the case on the merits made findings of fact, rulings of law and an order for a decree. The judge found warrantably on the evidence, among other facts, that "On February 26, 1931, Mr. Bygrave, as attorney for H. D. Watts Company, received from the American Bond and Mortgage Company, and the United States Fidelity & Guaranty Company, certified checks, a certificate of deposit and other things of value in excess of $300,000, and from the proceeds thereof he has retained in his possession the sum of $30,000 in compliance with the terms of the interlocutory decree of July 24 [25], 1930, and is holding said sum pending further order of the court in this case." In accordance with the order a final decree was entered establishing the indebtedness of the principal defendant to the plaintiff in the sum of $26,619.18, ordering the defendant H. Robert Bygrave to pay to the plaintiff out of the fund of $30,000 held by him under the interlocutory decree the sum so established with interest and costs

and to account for any balance thereof to the principal defendant, and dismissing the bill as to all other defendants. From this final decree the principal defendant appealed. The evidence is reported.

The final decree was right for (a) the plaintiff, in the circumstances existing when the original bill was filed, was entitled under G. L. (Ter. Ed.) c. 214, § 3 (7), to relief in equity, (b) the so called "supplemental bill" properly brought before the court for its consideration changes in circumstances occurring after the filing of the original bill and those changes as disclosed by the evidence and the findings thereon did not destroy the plaintiff's right to equitable relief, and (c) the relief granted to the plaintiff by the decree was appropriate on the pleadings and the facts found.

First. The plaintiff, in the circumstances existing when the original bill was filed, was entitled to relief in equity under G. L. (Ter. Ed.) c. 214, § 3 (7).

Under this statute suits in equity can be brought "by creditors to reach and apply, in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth, which cannot be reached to be attached or taken on execution in an action at law, although the property sought to be reached and applied . . . is of uncertain value, if the value can be ascertained by sale, appraisal or by any means within the ordinary procedure of the court."

1. At the time the original bill was filed there was "a debt . . . of a debtor . . . without the commonwealth," the appellant, to the plaintiff.

The judge found — and we cannot pronounce his findings plainly wrong — that the plaintiff entered into a written contract with the appellant "by which the former undertook to furnish certain building materials and perform certain work in connection with the erection" of a building in Virginia, that in pursuance of this contract the plaintiff furnished such building materials and performed such labor and thereafter, on December 30, 1922, sent to the appellant a

final bill in the amount stated in the original bill of complaint, no part of which has been paid, that before the bill of complaint was filed a representative of the appellant, "with authority so to do, for and in behalf of" the appellant, agreed that the balance due from it to the plaintiff was $17,142.33, the amount set forth in the final bill, and that the appellant was indebted to the plaintiff "for goods sold and delivered and labor performed" in that amount with interest.

On these findings the contract between the plaintiff and the appellant was executed on the part of the plaintiff and the liability of the appellant thereunder was liquidated (see *Cochrane* v. *Forbes*, 267 Mass. 417, 420) so as to be a "debt" within the meaning of the statute before the original bill was filed. *H. G. Kilbourne Co.* v. *Standard Stamp Affixer Co.* 216 Mass. 118, 121. *New England Oil Refining Co.* v. *Canada Mexico Oil Co. Ltd.* 274 Mass. 191, 202. Compare *Stone, Timlow & Co. Inc.* v. *Stryker*, 230 Mass. 67.

The appellant contends, however, that, since all parties to the original bill were foreign to this jurisdiction, the court should not have taken jurisdiction of the suit. Thus the doctrine *forum non conveniens* is invoked. This doctrine was discussed in the case of *Universal Adjustment Corp.* v. *Midland Bank, Ltd., of London*, 281 Mass. 303. It was there stated that "the principle is that where in a broad sense the ends of justice strongly indicate that the controversy may be more suitably tried elsewhere, then jurisdiction should be declined and the parties relegated to relief to be sought in another forum" (page 313), that the "principle manifestly ought to be applied with caution" (page 315), and that the determination of the question whether it ought to be applied in any particular case involves an element of discretion (page 316). In the present case the trial court retained jurisdiction, and the matter has been fully tried. Abuse of discretion in retaining jurisdiction does not appear. Whether to have declined jurisdiction would have been an abuse of discretion need not be decided.

2. The cause of action of the appellant against the other defendant to the original bill was, at the time that bill was

filed, "property, right, title or interest, legal or equitable" of the appellant which could be reached in equity by the plaintiff under the statute.

The judge, in conformity with the allegations of the original bill and warrantably on the evidence, found that on or about July 25, 1922, the appellant entered into a building contract with The Chatham, Inc. (a Massachusetts corporation) for the erection of an apartment hotel in Brookline, Massachusetts, and in July, 1923, "brought an action of tort against the American Bond and Mortgage Company (a Maine corporation) to recover damages for an unlawful interference by the said American Bond and Mortgage Company with the above mentioned contract between the H. D. Watts Company and The Chatham, Inc., as a result of which unlawful interference said contract was broken by The Chatham, Inc." The judge states in his findings that the appellant's cause of action was described and discussed by this court in the cases entitled *H. D. Watts Co.* v. *American Bond & Mortgage Co.* 260 Mass. 599; 267 Mass. 541; 272 Mass. 84. From these reported cases it appears that the action was brought in the Superior Court for the county of Suffolk, and that the cause of action had not been reduced to judgment at the time the original bill was filed.

On the point that such a cause of action can be reached under the statute, *Digney* v. *Blanchard*, 229 Mass. 235, is controlling. The appellant contends, however, that the present case is distinguishable from *Digney* v. *Blanchard* on the grounds that the plaintiff in that case was a judgment creditor of the principal debtor, that the debtor there admitted by demurrer the validity of the claim which the plaintiff sought to reach and apply, and that such claim sounded in contract rather than in tort. But these distinctions, so far as they exist, do not affect the governing principle. Relief under the statute is not limited to judgment creditors of the principal debtor (*H. G. Kilbourne Co.* v. *Standard Stamp Affixer Co.* 216 Mass. 118, 120), and there is, in the present case, as effective an admission by the principal debtor of the validity of its claim sought to be reached and applied as there was in *Digney* v. *Blanchard*.

The principal debtor's cause of action, as in *Digney* v. *Blanchard,* was not the less "property, right, title or interest, legal or equitable," at the time the original bill was filed, within the broad meaning of the statute, because it was then in controversy, had not been reduced to judgment, and might turn out to be valueless. This cause of action was not so contingent or conjectural as to fall outside the statute. It was dependent for its existence upon no future act of any person. The only element in any sense future or contingent when the original bill was filed was the outcome of proceedings then pending for the determination of the existence and value of the legal rights claimed by the appellant. The pendency of such proceedings did not affect the existence of the rights and the final decision therein would establish the existence and value of those rights as of the time the proceedings were instituted. See *New England Oil Refining Co.* v. *Canada Mexico Oil Co. Ltd.* 274 Mass. 191, 202–203, 204. The case, therefore, is distinguishable from *Pettibone* v. *Toledo, Cincinnati & St. Louis Railroad,* 148 Mass. 411, 419–420, *Wheelock* v. *Globe Construction Co.* 195 Mass. 456, and *Hopedale Manuf. Co.* v. *Clinton Cotton Mills,* 224 Mass. 193, relied on by the appellant. And the proceedings were pending in the same court in which this suit in equity was brought, so that the suit does not interfere with property in the control of another court. See *Adamian* v. *Hassanoff,* 189 Mass. 194, 196.

Furthermore, it is immaterial that the cause of action sought to be reached and applied in this suit sounds in tort rather than in contract in view of the nature of the tort. A cause of action which is not assignable cannot be reached and applied under the statute (*Pettibone* v. *Toledo, Cincinnati & St. Louis Railroad,* 148 Mass. 411, 419, *Bennett* v. *Sweet,* 171 Mass. 600), but, in view of the broad language of the statute (see *Orange Hardware Co.* v. *Ryan,* 272 Mass. 413, 416, and cases cited), an action of tort which, though not reduced to a judgment, is assignable is not excluded from the application of the statute if it meets the other requirements thereof. *Delval* v. *Gagnon,* 213 Mass. 203, 206.

A cause of action for personal injuries not reduced to a judgment, though it survives (G. L. [Ter. Ed.] c. 228, § 1), is not assignable. *Sibley* v. *Nason*, 196 Mass. 125, 129–130, and cases cited. Nor, as was held in *Titcomb* v. *Bay State Grocery Co.* 254 Mass. 599, 601, is a cause of action in tort assignable where the damage "comprehends not only damages to property, but also injury to the business credit and financial standing, to the reputation and the feelings of the injured person." The cause of action is indivisible. See *Sibley* v. *Nason*, 196 Mass. 125, 131. But a cause of action, not reduced to a judgment, for a tortious act occasioning damage solely to specific property is assignable. *Delval* v. *Gagnon*, 213 Mass. 203, 206. See *Commonwealth* v. *Market Warehouse Co.* 250 Mass. 449, 451. In *Rice* v. *Stone*, 1 Allen, 566, in holding a cause of action for personal injuries nonassignable, the court said: "And at the present day claims for property and for torts done to property are generally to be regarded as assignable, especially in bankruptcy and insolvency" (page 568). "Assignments of claims for torts done to property seem to be exceptions [to the rule of nonassignability]; yet these claims differ essentially from claims for personal torts. A claim for the tortious conversion or destruction of property, is based on a right to property which has a certain value. A claim for an injury to the property which is less than a conversion or destruction of it, is of the same character" (pages 569–570). By analogy, however, to the survival or nonsurvival of actions for "damage to . . . property" (G. L. [Ter. Ed.] c. 228, § 1; see *Rockwell* v. *Furness*, 215 Mass. 557, 558; *Bailey* v. *Powell*, 239 Mass. 110, 113–114), causes of action for damage to the general estate, rather than to specific property, of an individual or corporation are not assignable. *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 479. *Lee* v. *Fisk*, 222 Mass. 418, 423–424. *Brocklehurst & Potter Co.* v. *Marsch*, 225 Mass. 3, 11. *Mulready* v. *Pheeny*, 252 Mass. 379, 382. *American Woolen Co.* v. *Old Colony Trust Co.* 263 Mass. 321, 324. And a mere right to litigate for a fraud perpetrated upon an individual or a corporation resulting in damage personal in character or to the general estate does

not survive — in the case of an individual — and is not assignable. *Bailey* v. *Powell*, 239 Mass. 110, 113–114, and cases cited. *American Woolen Co.* v. *Old Colony Trust Co.* 263 Mass. 321, 324, and cases cited. This principle, however, is inapplicable where the damage is solely to specific property. It was said in *Cutter* v. *Hamlen*, 147 Mass. 471, 473: "But *Leggate* v. *Moulton* [115 Mass. 552] implies, as plainly as the English cases decide, that an action for injury to specific property . . . will survive as well when the wrong is brought to pass by fraud as when it is done by force. See *Hatchard* v. *Mège*, 18 Q. B. D. 771; *Oakey* v. *Dalton*, 35 Ch. D. 700. In such cases the action is not for the deceit alone, the naked *injuria*, but for the damage caused by the deceit. The nature of the damage sued for, not the nature of its cause, determines whether the action survives." See *Jenks* v. *Hoag*, 179 Mass. 583, 586; *Titcomb* v. *Bay State Grocery Co.* 254 Mass. 599, 601. See also *Baker* v. *Crandall*, 78 Mo. 584, 587–588; *Reynolds* v. *Hennessy*, 17 R. I. 169, 172–173; *Bullowa* v. *Gladding*, 40 R. I. 147.

The appellant's cause of action against the defendant American Bond and Mortgage Company was for damage to specific property — the appellant's building contract with The Chatham, Inc. Rights under such a contract are property. See *Beekman* v. *Marsters*, 195 Mass. 205, 211–212; *Godin* v. *Niebuhr*, 236 Mass. 350, 351; *Lawrence Trust Co.* v. *Sun-American Publishing Co.* 245 Mass. 262, 266; *Ross* v. *Wright, ante,* 269. This contract by its terms was assignable. When fully executed by the appellant, if not before, the appellant's rights thereunder could be reached and applied to the payment of its debts. *Lord* v. *Harte*, 118 Mass. 271. Compare *Hopedale Manuf. Co.* v. *Clinton Cotton Mills*, 224 Mass. 193. Moreover, a cause of action for breach of such a contract is property which is assignable and can be reached and applied under the statute. *Robinson* v. *Wiley*, 188 Mass. 533. *Digney* v. *Blanchard*, 229 Mass. 235, 239. The "measure of recovery" in the action of the appellant against the defendant American Bond and Mortgage Company for unlawful interference with this contract, like

that for a breach thereof (*Druggists Circular, Inc.* v. *American Soda Fountain Co.* 240 Mass. 531, 534), was the "actual value of the contract . . . what the plaintiff would have received if . . . [it] had not been deprived of its performance." *H. D. Watts Co.* v. *American Bond & Mortgage Co.* 260 Mass. 599, 613–614; 267 Mass. 541, 551–552; 272 Mass. 84, 87, 93. The damage creating the cause of action was not personal to the appellant nor damage to its general estate, but, rather, was damage to the specific contract. Compare *Jenks* v. *Hoag*, 179 Mass. 583, 586. The action for unlawful interference with the contract resembles so closely an action for breach thereof that there seems to be no good reason for denying either survival or assignability to an action of tort for procuring the breach of such a contract when an action of contract for breach thereof would survive and be assignable. See *Wikstrom* v. *Yolo Fliers Club*, 206 Cal. 461; *Jackson* v. *Deauville Holding Co.* 219 Cal. 498; *Metropolitan Life Ins. Co.* v. *Fuller*, 61 Conn. 252, 259–260; *Conaway* v. *Co-Operative Homebuilders*, 65 Wash. 39, 45–46; 2 R. C. L. 595–596, § 3; 76 Am. L. R. Note, 403, 410.

It was said in *Rice* v. *Stone*, 1 Allen, 566, 570, in reference to actions for personal torts, some of which survive by statute (G. L. [Ter. Ed.] c. 228, § 1), that "A claim to damages for a personal tort, before it is established by agreement or adjudication, has no value that can be so estimated as to form a proper consideration for a sale. Until it is thus established, it has no elements of property sufficient to make it the subject of a grant or assignment. The considerations which are urged to a jury in behalf of one whose reputation or domestic peace has been destroyed, whose feelings have been outraged, or who has suffered bodily pain and danger, are of a nature so strictly personal, that an assignee cannot urge them with any force." See also *Sibley* v. *Nason*, 196 Mass. 125, 130. This reason for non-assignability is inapplicable to a cause of action such as is here in question.

3. The value of the cause of action "can be ascertained by sale, appraisal or by . . . means within the ordinary

procedure of the court." On this point the case is governed by *Digney* v. *Blanchard,* 229 Mass. 235, 239.

Second. The so called "supplemental bill" properly brought before the court for its consideration changes in circumstances occurring after the filing of the original bill and those changes as disclosed by the evidence and the findings thereon did not destroy the plaintiff's right to equitable relief.

The "supplemental bill" was in the nature of an amendment to the original bill. Equity Rule 21 (1926) (see now Rule 16 of the Superior Court [1932]). The function of such an amendment is to "support a cause of suit existing when the original bill was filed. Matters subsequently occurring and relating to the right set up in the original bill can thus be availed of, and the relief adapted to the existing circumstances." *Bartlett* v. *New York, New Haven & Hartford Railroad,* 226 Mass. 467, 471.

There was evidence that the appellant had actual notice of the filing of the "supplemental bill." In later proceedings the appellant was represented by counsel appearing specially for the protection of its interest in the property within the jurisdiction of the court referred to in the "supplemental bill." Further notice to the appellant of the "supplemental bill" or issuance and service of process thereon was not necessary. *Phillips* v. *Director General of Railroads,* 251 Mass. 263, 266–267.

The judge found in accordance with allegations in the "supplemental bill" that "The cause of action of the H. D. Watts Co. *vs.* American Bond & Mortgage Company was reduced to judgment in favor of the H. D. Watts Company on or about July 14, 1930, and on July 15, 1930, an execution was issued by the clerk of the Superior Court on said judgment." These facts support the cause of suit stated in the original bill. The judgment stood in place of the cause of action which the plaintiff sought to reach and apply by the original bill, and was itself property which could be reached and applied under the statute. *Orange Hardware Co.* v. *Ryan,* 272 Mass. 413. The change in the form of the property did not deprive the plaintiff of the

right to have it applied in payment of the debt of the appellant. See *New England Oil Refining Co.* v. *Canada Mexico Oil Co. Ltd.* 274 Mass. 191, 204.

Third. The relief granted to the plaintiff by the decree was appropriate on the pleadings and the facts found.

The judge found warrantably that the defendant H. Robert Bygrave "on behalf of himself and also for and on behalf of his client, the H. D. Watts Company, with authority so to do, agreed to the entry on July 24, 1930, of the interlocutory decree modifying the restraining orders." Consequently the money which the defendant H. Robert Bygrave has retained in his possession in compliance with the terms of this interlocutory decree and is now holding pending the order of this court stands in place of the judgment in the case of H. D. Watts Co. *v.* American Bond & Mortgage Co. and is available for the payment of the appellant's debt to the plaintiff. The decree that it be so applied was proper.

*Decree affirmed with costs.*