# United States Court of Appeals
## For the First Circuit

No. 00-1350
No. 00-1351

TILCON CAPALDI, INC., f/k/a TILCON GAMMINO, INC.,

Plaintiff, Appellant/Cross-Appellee,

v.

GERALD FELDMAN,

Defendant, Appellee/Cross-Appellant.
_____

OLD MASHPEE ASSOCIATES LIMITED PARTNERSHIP,
NEWTON CENTRE RESTAURANT CORP., R&J, INCORPORATED,
LEONARD J. SAMIA and
NEW BOSTON FINANCIAL PARTNERSHIP,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Boudin, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lynch, Circuit Judge.

Joseph J. Brodigan, P.C. with whom Langan, Dempsey & Brodigan was on brief for plaintiff.
Peter B. McGlynn with whom Jason A. Manekas and Bernkopf, Goodman & Baseman LLP were on brief for defendant Gerald Feldman.

BOUDIN, Circuit Judge.  In 1986, Tilcon Capaldi, Inc. ("Tilcon"), a Rhode Island general contractor, sued to enforce a mechanics' lien against Commercial Associates ("CA"), a Massachusetts partnership for whom Tilcon had done site work required for construction of a shopping center.  After extended and ramifying litigation in both state and federal court, Tilcon obtained a judgment in 1992 in the federal district court in Rhode Island for over $1 million in contract damages and ever mounting interest.[1]  The judgment identified both CA and its general partners as liable, without specifying whether the parties were jointly or severally liable or whether they were liable in their individual or partnership capacity.

Eventually, Tilcon registered the judgment with the federal district court in Massachusetts.  28 U.S.C. § 1963 (1994 & Supp. II 1996).  In April 1997, that court issued a writ of execution, mounting interest bringing the sum due to almost $1.8 million.  Unlike the Rhode Island district court judgment, this

---

[1]Reported decisions in this saga include Commercial Associates v. Tilcon Gammino, Inc., 998 F.2d 1092 (1st Cir. 1993), Commercial Associates v. Tilcon Gammino, Inc., 801 F. Supp. 939 (D.R.I. 1992), and Tilcon Gammino, Inc. v. Commercial Associates, 570 A.2d 1102 (R.I. 1990).

initial Massachusetts judgment specified that CA and the general partners were jointly and severally liable for the judgment. Once again, the judgment did not state the capacity in which the partners were liable. Jerald Feldman was one of CA's general partners named in the judgment.

In May 1997, Tilcon brought the present action in federal district court in Massachusetts to reach and apply assets of Jerald Feldman to satisfy the judgment. Mass. Gen. Laws ch. 214, § 3(6)-(7) (1998). Of importance for this appeal, Tilcon sought to reach and apply--among other Feldman assets--Feldman's interests in three nominee trusts apparently created by Feldman and co-beneficiaries: his 16.88% beneficial interest in Kelstock Realty Trust ("Kelstock"), his 18.75% beneficial interest in Marlborough Realty Trust ("Marlborough"), and his 25% interest in Commercial Properties Trust ("Comprops").

A bench trial was held in this reach and apply action. Feldman did not dispute that he held interests in the three trusts, but he claimed that his interests could not be reached because joint venture agreements, entered into after the trusts were formed, made the interests unassignable.[2] In addition,

_____

[2]Initially a joint venture, Comprops was restructured during this case as a limited partnership on the understanding that the restructuring would not prejudice Tilcon's right of recovery. Thus, for present purposes, it is convenient to treat it as if the joint venture were still in force.

Feldman argued that under principles of partnership law, he was not liable for the judgment or, in the alternative, that he was only liable for his aliquot share of the judgment.

In a decision rendered on January 5, 2000, the district judge agreed with Feldman that his interests could not be reached by Tilcon because the joint venture agreements made Feldman's interests unassignable. The court also found that because Tilcon's judgment against Feldman rested on a contract claim, he was only jointly liable and was therefore liable only for his aliquot share. Finally, the court concluded that Tilcon's earlier settlements with two of CA's other general partners had not released Feldman from any liability, and that Tilcon could recover from Feldman's assets (apart from the trust interests) despite Feldman's claim that Tilcon had not exhausted all efforts to satisfy the judgment from CA's partnership assets.

Both parties now appeal from the district court's judgment. Tilcon seeks to reach Feldman's trust interests and to hold him liable for the full judgment; Feldman disclaims any liability because of Tilcon's releases to other partners and alleged failure to exhaust partnership assets. We address these contentions in turn, applying de novo review to rulings of law.

United States v. Howard (In re Howard), 996 F.2d 1320, 1327 (1st Cir. 1993).

1. The most difficult issue is whether Feldman's interests in the trusts, now themselves embedded in joint ventures, can be reached and applied to satisfy the judgment against him. The basic tenets of Massachusetts law are clear.[3] A creditor may "reach and apply" a debtor's interest in intangible property that cannot otherwise be executed against in an action at law, Mass. Gen. Laws ch. 214, § 3(6), including a debtor's beneficial interest in trusts, New Eng. Merchs. Nat'l Bank of Boston v. Hoss, 249 N.E.2d 635, 638 (Mass. 1969). However, self-settled trusts aside, a creditor may not reach and apply a debtor's interest if the trust includes a spendthrift clause by which the creator of the trust (the settlor) forbids creditor attachments. Hale v. Bowler, 102 N.E. 415, 416 (Mass. 1913).

However, special rules apply when a settlor creates a trust for his own benefit and also attempts to immunize the

_____

[3]Also not in dispute is that Massachusetts law applies to this aspect of the case. Fed. R. Civ. P. 69(a) ("The procedure on execution . . . shall be in accordance with the practice and procedure of the state in which the district court is held . . . ."); see also Aetna Cas. & Sur. Co. v. Markarian, 114 F.3d 346, 349-50 (1st Cir. 1997).

-5-

trust from creditor claims.  In such cases, Massachusetts has adopted the Restatement rule:

> Where a person creates for his own benefit a trust for support or a discretionary trust, his . . . creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit.

Ware v. Gulda, 117 N.E.2d 137, 138 (Mass. 1954) (internal quotation marks omitted); accord Restatement (Second) of Trusts § 156(2) (1959) [hereinafter Restatement].  Thus, even if the trustee chooses not to make any payments to the beneficiary, a creditor may still reach the maximum amount the trustee could pay.  2A Scott & Fratcher, The Law of Trusts § 156.2, at 178 (1987) (summarizing the holding in Ware).

This rule keeps a debtor from protecting his "property in such a way that he can still enjoy it but can prevent his creditors from reaching it."  2A Scott & Fratcher, supra, § 156, at 167.  It is not necessary to the rule adopted by Ware that the transferor intend to defraud his creditors.  Restatement § 156(2) cmt. a.  The Ware rule also applies even if the trust includes an explicit spendthrift provision.  State St. Bank & Trust Co. v. Reiser, 389 N.E.2d 768, 770 (Mass. App. Ct. 1979) (citing cases); accord Restatement § 156(1).  It has special force in the case of nominee trusts, where the beneficiary can control the trustee's actions, cf. Sylvia v. Johnson, 691 N.E.2d

608, 610 (Mass. App. Ct. 1998), but it applies even where the trustee has sole discretion, Ware, 117 N.E.2d at 138.

If we were only looking at Feldman's interests in the three trusts before they became subject to the joint venture agreements, Tilcon would have a straightforward claim to reach and apply Feldman's interest in the self-settled trusts. In each case, Feldman had a beneficial interest and, as Ware teaches, a spendthrift limitation would not be effective to block Tilcon's claim. However, the Comprops beneficiaries entered into a joint venture agreement in January 1989, and the Kelstock and Marlborough trust beneficiaries did so in August 1994. Hence, by the time Tilcon attempted to reach and apply Feldman's interests in the trusts in 1997, they were subject to a new set of restrictions on transfers.

The Kelstock, Marlborough, and relevant Comprops joint venture agreements provide that the joint venturers "may not sell, transfer, convey, mortgage, encumber or otherwise dispose of all or any part of . . . their Interest or rights in the Venture," except by transfer to other original venturers or their family members, and except in response to a bona fide written offer to which the other venturers agree after exercising rights of first refusal. In addition, each agreement contains a spendthrift provision which purports to protect all

the income and corpus of the venture from attachment by creditors. Both sides have assumed that Feldman's joint venture interest subsumes his trust interest.

In the decision now before us, the district judge relied on the anti-assignment clauses in the joint venture agreements to debar Tilcon from reaching Feldman's trust interests. Of course, Feldman was not seeking to assign either his trust or joint venture interests. But based on his reading of Massachusetts case law, the district judge held--as a general rule--that the reach and apply statute in Massachusetts applies only to interests that <u>are</u> capable of being assigned. The district court ruled that the anti-assignment clauses took away this capability and therefore blocked Tilcon.[4]

We disagree. The reach and apply statute in Massachusetts is very broadly written and contains no express reservation for cases in which an anti-assignment clause exists. Indeed, the statute extends explicitly to a defendant's interest in partnership property where one would expect that there would commonly be contractual limits on assignment. Mass. Gen. Laws

---

[4]Strictly speaking, the joint venture agreements purported to prevent Feldman from assigning his interest in the joint venture--not his trust interest. However, the district judge and the parties have not distinguished the two but have instead treated the anti-assignment clause as if it applied to the trust interest as well as the joint venture interest.

ch. 214, § 3(6). It is hard to see why the Massachusetts Supreme Judicial Court, which decided Ware, would not read the statute to override self-imposed anti-assignment clauses as readily as self-imposed clauses barring creditor attachment. Indeed, Ware itself involved a trust in which both clauses were present. 117 N.E.2d at 138.

The district court's contrary view rests primarily on one Massachusetts decision stating that certain personal tort causes of action were unassignable and could not be reached under the reach and apply statute. Bethlehem Fabricators, Inc. v. H.D. Watts Co., 190 N.E. 828, 833 (Mass. 1934). But such claims are unassignable for policy reasons that do not apply here. See id. at 568. We do not read Bethlehem, or another case where state law barred a transfer of an interest without legislative consent, Hurley v. Boston R.R. Holding Co., 54 N.E.2d 183, 198-99 (Mass. 1944), as making a self-imposed anti-assignment clause a bar to the reach and apply statute. To us, Ware is presumptively the proper analogy unless the joint venture situation can be meaningfully distinguished from Ware's treatment of trusts.

The best argument for a distinction is that the spendthrift clause in a self-settled trust is often just a self-indulgence at the expense of creditors. By contrast, in a joint

business, it is solvent partners (not just the scapegrace debtor) who will be affected if a new and unwelcome "partner" supplants the debtor.  It would be possible for this reason to treat Ware as limited to trusts and to treat anti-assignment clauses in joint ventures as blocking the reach and apply statute--albeit not because of any general rule in Bethlehem.

However, the reach and apply statute itself provides that a partner's interest in partnership property may be reached and applied to satisfy a business debt, and the reach and apply statute is subject to equitable limitations.[5]  Perhaps on specific facts allowing a joint venture interest to be seized outright by the creditor would seriously disrupt the business; if so, conceivably limitations might be imposed on the remedy (e.g., by providing that the creditor could receive profits but not participate in management).  But the mere potential for such problems in some cases, for which tailored solutions are usually possible, is no reason to bar the reach and apply statute from the start.

_____

[5]The statute explicitly provides limitations to avoid disrupting partnership business, Mass. Gen. Laws ch. 214, § 3(6), and a court's broader equitable powers apply, allowing additional limitations on applications of the statute, see Bressler v. Averbuck, 76 N.E.2d 146, 148 (Mass. 1947); Shapiro, Perlin & Connors, Massachusetts Collection Law § 11:23 (2d ed. 1992).

In the present case, Feldman has apparently made no effort to show any specific disruption from the seizure of his interests nor, perhaps more pertinently, have his co-venturers sought to do so. We think that this failure even to allege such facts forfeits any such argument; but we leave it open to the district judge on remand (if he wishes) to consider limitations, assuming that he is persuaded that serious problems are presented for the other joint venturers. Otherwise, the reach and apply statute applies with full force to Feldman's trust and joint venture interests.

2. Tilcon's second claim on appeal is that the district court erred in determining that Feldman was only "jointly" liable for the judgment and not "jointly and severally" liable. The district judge's determination, says Tilcon, improperly makes Feldman only responsible for his "aliquot share of the judgment" instead of the entire amount. The district judge did indeed say that Feldman was only liable for his "aliquot share." Apparently the parties and the district judge use the term "aliquot," often used to denote a fractional interest, to indicate that Feldman is currently held responsible only for a share of the judgment proportional to his share in the CA partnership.

In attacking the district judge's ruling, Tilcon argues that the Rhode Island federal court judgment, before being registered in Massachusetts, did not say that Feldman or any other defendant was liable for less than the full amount (some courts presume that an unadorned judgment is joint and several, Angona v. County of Nassau, 129 A.D.2d 543, 543-44 (N.Y. App. Div. 1987)); that the district judge should not have looked beyond the bare language of the original judgment; that, in any case, Feldman failed to offer evidence that the underlying liability was only for a breach of contract (which is ordinarily joint only); and that it was up to Feldman to get the judgment clarified in Rhode Island but he failed to do so.

Probably Feldman's liability under the Rhode Island federal judgment is only joint,[6] but Tilcon is mistaken in thinking that this makes Feldman responsible only for a portion of the judgment, aliquot or otherwise. This is so even if we agree, as we would be likely to do if it mattered, that the

---

[6]What matters is the Rhode Island federal judgment. The clerk in the Massachusetts district court added, at Tilcon's behest, the words "jointly and severally" when the judgment was registered, but the district judge in this case deemed this irrelevant and Tilcon properly does not dispute in principle the "reformation" of the initial Massachusetts judgment. The pertinent language from the Rhode Island federal judgment, that judgment as registered by Tilcon in the Massachusetts district court, and the final Massachusetts federal judgment are included as an appendix to this opinion.

-12-

judgment should be read or reformed to make it explicit that liability of the CA partners is joint only.  But why this is so takes a bit of explaining, the point being rarely discussed in any detail in either recent case law or modern treatise.

At common law, the phrase "joint and several" refers to the liability of multiple wrongdoers (typically, for torts). It means that damages are a single sum specified in the judgment, that each wrongdoer is liable for the full amount, but the wronged party cannot collect under the judgment <u>more</u> than the single sum.  <u>Restatement (Third) of Torts</u> § 20 & cmt. b (Proposed Final Draft (Revised) 1999).  Joint liability (typically, for breach of contract) does <u>not</u> differ in these respects, contrary to Tilcon's assumption; each party jointly liable for a judgment for breach of contract is liable for the <u>full</u> amount.  2 Bromberg & Ribstein, <u>Bromberg & Ribstein on Partnership</u> § 5.10(b), at 5:91-92 (2000); 12 Richard A. Lord, <u>Williston on Contracts</u> § 36:1, at 610 (4th ed. 1999) [hereinafter <u>Williston</u>].

The difference in the two types of liability is in certain <u>other</u> details, largely vestiges of common law procedure, which still bite where they have not been abolished. Importantly, the common law rule was that all those jointly liable had to be sued together or the suit would be dismissed,

and that a settlement with one of those liable discharged all of the others.  2 Bromberg & Ribstein, supra, §§ 5.08(b), 5.10(b)-(c).   Further,  in  the  case  of  partners  jointly  (but  not severally) liable for a wrong done by the partnership, there is a requirement that partnership assets be sought first.  Id. § 5.08(d).[7]

Finally, there is sometimes an interplay between these two  categories  of  liability  and  issues  of  contribution, Restatement (Third) of Torts § 23 reporters' note, cmt. a. However, the relationship is complicated, the cases are not uniform, and contribution rules have increasingly been affected by statute, e.g., Mass. Gen. Laws ch. 231B, § 1 (1998).  In any case, issues of contribution are distinct from questions of what a plaintiff may collect from any individual defendant.

In short, even if the judgment is joint only, Tilcon can --subject to defenses yet to be discussed--collect the full amount of the judgment from Feldman (to the extent it has not already been paid by others).  So far as the district court's

---

[7]Just to round out the trilogy of types of liability, liability is termed "several" when different individuals are separately liable for what may be different amounts (e.g., where a tortfeasor is liable for the amount of damages in direct proportion to his percentage of fault, Restatement (Third) of Torts § 21, or where parties to a contract are each "bound separately for the performance which he or she promises," Williston, supra, § 36:1, at 611).

reference to aliquot liability in this case indicates otherwise, the district court judgment must be modified. On the issue of full versus partial liability, the question whether the judgment is joint only turns out to be irrelevant. As will shortly be apparent, it also turns out to be irrelevant to two defenses offered by Feldman (discharge by settlement with another partner and failure to exhaust partnership assets) even though ordinarily at common law jointness is important in passing upon such defenses.

Because the outcome of this case is unaffected by whether liability is joint or joint and several, we need not pursue the multi-faceted problems--including interesting choice of law issues not addressed by the parties--involved in deciding whether the underlying Rhode Island federal judgment was for joint liability only. However, it is worth noting that the original Rhode Island federal judgment grounds liability specifically on breach of contract; both in Massachusetts and Rhode Island, the derivative liability of partners for breach of contract by the partnership is joint only. See Mass. Gen. Laws ch. 108A, § 15(1) (1998); R.I. Gen. Laws § 7-12-26(a) (1999); see also 2 Bromberg & Ribstein, supra, § 5.08(b).

3. By cross appeal, Feldman urges two defenses to preclude all personal liability, at least at this time. He says

that when Tilcon signed settlement agreements with two other CA partners, this discharged his liability entirely. Separately, he claims that if he is liable at all, Tilcon is not entitled to collect against him until it shows that it has exhausted the partnership assets. Both arguments assume that Feldman's liability is joint only--otherwise the objections would not apply--and we will assume jointness arguendo.

Starting with the discharge defense, Tilcon admits that it made partial settlements with two other CA partners, but points out that each settlement agreement purported to reserve its rights against other partners like Feldman. At common law, the discharge of one person jointly liable, by settlement or otherwise, discharged the others. 12 Williston, supra, § 36:18, at 684-85. As to partnership obligations, Rhode Island has rejected this so- called "unity of discharge" rule by statute. R.I. Gen. Laws § 7-12-9. Nevertheless, the district court thought that Massachusetts law governed--CA is a Massachusetts partnership--and Tilcon makes no effort to show that this choice of law decision was mistaken.

Feldman says that Massachusetts has never explicitly abrogated the unity of discharge rule for partnerships. However, as the district court noted, Massachusetts has abrogated the rule for joint tortfeasors, Mass. Gen. Laws ch.

231B, § 4(a) (1998); <u>Selby</u> v. <u>Kuhns</u>, 188 N.E.2d 861, 865-66 (Mass. 1963), and also for co-obligors when, as here, there is an express reservation of rights or other sufficient evidence of intent not to release co-obligors, <u>Hale</u> v. <u>Spaulding</u>, 14 N.E. 534, 534-35 (Mass. 1888).   The district judge held that Massachusetts courts would take the same view as to partnerships.

Although the Massachusetts Supreme Judicial Court has been silent on this issue, indications are that it would treat partnerships like other co-obligors in this respect. <u>Cf.</u> <u>Selby</u>, 188 N.E.2d at 865-66 (unity of discharge doctrine generally discredited).  At least one Massachusetts appellate court has specifically suggested as much.  <u>E. Elec. Co.</u> v. <u>Taylor Woodrow Blitman Constr. Corp.</u>, 414 N.E.2d 1023, 1028-30 (Mass. App. Ct.), <u>rev. denied</u>, 441 N.E.2d 1042 (Mass. 1981).  Moreover, a First Circuit panel has previously concluded that Massachusetts' rejection of the unity of discharge rule is not narrowly confined.   <u>Hermes Automation Tech., Inc.</u> v. <u>Hyundai Elecs. Indus. Co.</u>, 915 F.2d 739, 745-46 (1st Cir. 1990).  Against all this authority, Feldman's vague argument that partners should be treated differently (and that Massachusetts would diverge from the modern trend) is insufficient to carry the day.

-17-

Feldman's exhaustion defense is also unpersuasive. Here, choice of law does not appear to matter. Rhode Island follows the general rule that where a partner's liability is joint only and also derivative (_i.e._, imposed only because the defendant is a partner), the partnership assets must be sought and exhausted, or shown to be unavailable, before the private assets of an innocent partner can be seized. See <u>Nat'l Exch. Bank</u> v. <u>Galvin</u>, 37 A. 811, 811 (R.I. 1897). Massachusetts does not appear to have a case in point but we are told that exhaustion in such a case is the "virtually unanimous rule," 2 Bromberg & Ribstein, <u>supra</u>, § 5.08(e), at 5:68, and Tilcon cites no authority to show an exception applies.

Instead, Tilcon mainly argues that it has an "individual judgment" against Feldman and there is nothing in the judgment to show that Feldman's liability <u>is</u> derivative. Although the district court relied tersely on this argument, we would be surprised if the opaque language of the judgment were conclusive, <u>cf.</u> <u>E.I. Du Pont de Nemours & Co.</u> v. <u>Cullen</u>, 791 F.2d 5, 7 (1st Cir. 1986) (Breyer, J.) (looking beyond a state court judgment to the underlying complaint). And Tilcon offers no serious argument that Feldman was held liable except derivatively or that he waived the exhaustion defense (as partners sometimes do in loan documents).

-18-

On the other hand, we agree with the district court that Feldman is playing games with this issue. The district court pointed out that there is no "hint anywhere in the record that [CA] is a viable entity" and that the witness who Tilcon has said could have nailed down CA's insolvency "was excused at [Feldman's] request." We are thus faced with a situation in which Tilcon has long held an unsatisfied judgment against CA and Tilcon has not only alleged but also said how it could prove CA's insolvency.

In response, even on this appeal, Feldman has merely said that Tilcon failed to prove lack of partnership assets; there is no representation that such assets exist. In this situation, in which insolvency is suggested by circumstance and apparently uncontested, Feldman's objection based on failure to exhaust is not well taken. Cf. Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988) (district court entitled to rely on the undisputed factual allegations of a party moving for summary judgment).

To conclude, we hold that Feldman is liable for the entire amount of the judgment as executed by the district court of Massachusetts and that his interests in the Kelstock Realty Trust, Marlborough Realty Trust, and Commercial Properties Trust are able to be reached and applied, subject to such equitable

limitations as the district court may think necessary.  To this extent, the district court's judgment is vacated and <u>remanded</u> for further proceedings consistent with this opinion; in all other respects, the judgment is <u>affirmed</u>.  Costs on both appeals are awarded to Tilcon.

<u>It is so ordered</u>.

Appendix

<u>Judgment of the U.S. District Court for the District of Rhode Island</u>, Oct. 7, 1992 (excerpt)

> 3) Judgment for Tilcon Gammino on Count I of its counterclaim against Commercial Associates, Anthony J. DelVicario, Stephen J. Watchmaker, Neil Zais, Gerald Feldman and Thomas Prendergast for breach of contract in the amount of $268,903.23 plus interest from October 31, 1985, plus additional interest on the $1,200,000.00 recovered in the mechanics' lien proceeding from October 31, 1985 to January 24, 1991, plus costs.

<u>Execution of Judgment in the U.S. District Court of the District of Massachusetts</u>, Apr. 4, 1997 (excerpt)

> Plaintiff Tilcon Gammino, Inc. has recovered judgment, jointly and severally, against defendants' Commercial Associates, Anthony J. DelVicario, Stephen J. Watchmaker, Neil Zais, Gerald Feldman and Thomas Prendergast in the United States District Court for Massachusetts in the following amounts:
>
> 1. $268,903.23, together with pre-judgment and post-judgment interest of $366,725.25 as of March 14, 1997, for a total of $635,628.48.
>
> 2. $756,000, together with pre-judgment and post-judgment interest of $401,943.60 as of March 14, 1997, for a total of $1,157,943.60.
>
> **Total combined judgment with interest as of March 14, 1997, $1,793,572.**

<u>Final Judgment of the U.S. District Court for the District of Massachusetts</u>, Jan. 28, 2000 (excerpt)

> 1. The execution issued by this Court on April 4, 1997, in the case entitled <u>Commercial Associates, et al. v. Tilcon Gammino, Inc.</u>, Civil Action No. 96-10864 MBD, shall be reformed by striking the words "and severally" as they appear after the word "jointly" in the third paragraph of page one;
>
> 2. Jerald R. Feldman is jointly (but not severally) liable for the judgment issued in the

-21-

United States District Court for the District of Rhode Island in favor of Tilcon Gammino, Inc. on or about October 7, 1992, in the case entitled <u>Commercial Associates, et al. v. Tilcon Gammino, Inc.</u>, Civil Action No. 86-748T . . . .